583 So.2d 165 (1991)
Steve (Steven) Allen ADAMS
v.
STATE of Mississippi.
No. 89-KA-0335.
Supreme Court of Mississippi.
June 19, 1991.
Rehearing Denied August 21, 1991.
Charles P. Leger, Jackson, Pete Halat, Halat & Sherry, Albert H. Pettigrew, Biloxi, for appellant.
*166 Mike C. Moore, Atty. Gen., W. Glenn Watts, Sp. Ass't Atty. Gen., Jackson, for appellee.
En Banc.
BANKS, Justice, for the court:
Steve Allen Adams (hereinafter Adams) appeals his conviction by a Hancock County jury of two counts of sexual battery. Following his conviction, the trial judge sentenced him to a term of ten years each on both counts to be served consecutively. He now appeals to this Court assigning three errors. Two of the errors, the sufficiency of the evidence and an alleged discovery violation, are without merit and require no discussion. The third claimed error requires us once again to confront an issue which plagues the criminal justice system throughout our nation and which seems especially acute in our state  speedy trial. In the end we find that Adams was denied neither his statutory nor his constitutional right to speedy trial.
Because we restrict ourselves to a discussion of the speedy trial issue we may truncate our discussion of the facts in order to protect the privacy of the victim and others. It should suffice to say that Adams, a thirty-one year old male, had supervisory responsibilities with regard to the fifteen year old male victim and others for a period during the summer of 1987. On the occassion in question he subjected his charge to nonconsensual sexual relations, including reciprocal fellatio.
Adams' defense was that he could not have done that with which he is accused within the available time period. That was a matter submitted to the jury and we find that there is ample evidence to support the jury's resolution of that issue. Similarly, the trial court appropriately concluded that there was no discovery violation where Adams complained that he had not been kept up to date as to the witness' where abouts. It was shown that Adams had all of the information that the state had, including a telephone number through which the witness could have been located. This brings us to the speedy trial issue.

WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANTS MOTION TO DISMISS FOR DENIAL OF HIS CONSTITUTIONAL AND STATUTORY RIGHT TO A SPEEDY TRIAL.
The course of proceedings pertinent to this issue is as follows:
7/26/87 Alleged sexual battery occurred.
10/26/87 Adams arrested.
2/1/88 Hancock Grand Jury returned 2-count indictment in cause no. 6653 charging Adams with sexual battery by (1) inserting a suppository in the victim's anal cavity and (2) performing fellatio on the victim.
2/22/88 Adams waives arraignment and pleads not guilty in # 6653.
4/28/88 Adams granted a continuance by the court until July 5, 1988.
6/30/88 Adams reindicted in two single count indictments, one charging sexual battery by fellatio on the victim and another charging sexual battery by fellatio on Adams.
7/1/88 State entered an Order of Nolle Prosequi in indictment # 6653.
7/7/88 Adams' reindictment on single count indictments filed as Nos. 6754 and 6755.
8/9/88 Adams waives arraignment and enters not guilty plea.
9/19/88 Adams files Motion to Quash Nos. 6754 & 6755.
9/21/88 Court grants Adams Motion to Quash.
10/17/88 Adams re-indicted by grand jury on two counts of sexual battery in Nos. 6841 & 6842.
11/14/88 Adams waives arraignment and pleads not guilty in Nos. 6841 & 6842.
11/21/88 The case came on for trial but was not first on the docket and was bumped, whereupon, Adams suggested that his speedy trial rights may have been violated and indicated an intention to file a motion to dismiss. Adams' attorney was unavailable for trial the following week and indicated that if it was *167 to be bumped he preferred the January term.
12/2/88 Court on its own motion continues Nos. 6841 & 6842 among others which had not been reached during the term because of the trial of other matters.
1/20/89 Adams files Motion to Dismiss in Nos. 6841 & 6842 asserting speedy trial violations.
1/23/89 Court denies Adams' Motion to Dismiss
1/25-6/89 Trial.

STATUTORY SPEEDY TRIAL
The statutory right to a speedy trial attaches and time begins running after the accused has been arraigned. § 99-17-1 MCA (Supp. 1990). In calculating the statutory time, the date of arraignment is not included, but the date of trial is, as are weekends, unless the last day of the 270 day period falls on Sunday. Ransom v. State, 435 So.2d 1169, 1169-70 (Miss. 1983).[1] Where the state has demonstrated good cause and a continuance has been granted the time elapsed during the period of continuance is not counted against the state. Reed v. State, 506 So.2d 277, 281 (Miss. 1987). In addition, continuances granted to the defendant also toll the running of the statute and should be deducted from the total number of days. Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988).
From Adams' original arraignment until the first day of his trial, a total of 338 days elapsed. Of those days at least sixty-three must be deducted because Adams was granted a continuance on April 28, 1988 until July 5, 1988. The trial court entered an order on December 2, 1988 continuing the case until the January 1989 term of court. The order reflects that there was congested docket. This Court has recognized that a congested docket may give rise to good cause for a continuance. See, Williamson v. State, 512 So.2d 868, 877 (Miss. 1987). The January 1989 term of the Hancock County Circuit Court began on the second Monday, January 9. See, Mississippi Judiciary Directory And Court Calender, 73, (1989). This continuance, therefore, equalled thirty-seven days. Now the total number of days that must be deducted from the 338 days is 100. As a consequence Adams was tried within the 270 day period. It is readily apparent then that Adams' statutory right to a speedy trial was not violated. We need not reach the issue of the twenty-six day period which elapsed after the second indictments were quashed and before the final indictments were served and arraignment waived.

CONSTITUTIONAL GUARANTEE TO A SPEEDY TRIAL
Unlike the statutory right to speedy trial, Adams' constitutional guarantee to a speedy trial attached at the time he was arrested. Smith v. State, 550 So.2d 406, 408 (Miss. 1989). See also, Perry v. State, 419 So.2d 194, 198 (Miss. 1982). Once the right attaches, this Court must apply factors laid out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether Adams was denied his constitutional right. The four factors include: (1) the length of delay; (2) the reason for delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. Id. at 533; 92 S.Ct. at 2193. No one of the factors is, in itself, dispositive; rather, they must be considered together in light of all the circumstances. Smith, 550 So.2d at 408 citing Barker, 407 U.S. at 533, 92 S.Ct. at 2193; see also Trotter v. State, 554 So.2d 313, 316 (Miss. 1989).

Length of Delay
Between the time Adams was arrested and his first waiver of arraignment 118 days elapsed. When these days are *168 added to the other 338 days which elapsed before the start of trial, 456 days had passed before Adams was brought to trial. We have held that seven months delay is enough to cause further inquiry into the other factors. See, Smith, 550 So.2d at 408 citing Blake v. Katter, 693 F.2d 677, 681-82 (7th Cir.1982). Furthermore, any delay of eight months or longer is presumptively prejudicial. Smith, 550 So.2d at 408 (citations omitted). Therefore, the delay in the case sub judice is sufficient to trigger the Barker balancing analysis. It is necessary, then, to examine the other factors.

Reason for Delay
From the record, there appears to be several reasons why there was a delay in bringing Adams to trial. Two of the reasons have been explained. One of these delays is attributable to Adams while the other came upon the court's own motion and for good cause. The other delays bear some discussion.
First, as to the delay between arrest and indictment and arraignment we note that Hancock County, by order of the circuit court pursuant to Section 9-7-3, Miss. Code Ann. (1972), impanels grand juries in its January and July terms. Adams was indicted by the January grand jury which was the first one impaneled after his arrest. We also note that Adams was free on bond and that he is a Louisiana resident. Considering that fact, and the fact that as to each indictment he entered a waiver of arraignment and plea of not guilty, we may readily assume that some accommodation was given to his schedule. The brief delays between indictment and arraignment, then, should not be weighed heavily against the state.
There is no record explanation for the time between arraignment and the April 28 request for a continuance, but some time must be allowed for the completion of discovery. Moreover, it is apparent that the defendant was not ready for a May trial. Under the circumstances, none of the time prior to July 5, 1988 should be weighed against the state.
In the last days of June 1988 the state reindicted Adams, changing the facts of one of the counts and separating the counts into separate indictments. The record before this court fails to reflect the reason for this action. There is no indication that a motion was filed attacking the multi-count indictment. In reciting his concerns about speedy trial, defense counsel referred to the indictment as an "illegal multi-count indictment" and attributed illegality as the reason for its nolle proseque. That statement was not challenged, but in the context of the discussion then occurring there was no compelling reason to challenge it.
It should suffice to say that the delay occasioned by reindicting Adams should be charged against the state. At best for Adams, however, this delay is caused by mere negligence in preparing the original indictment and should not be weighed heavily. Barker, 407 U.S. at 531, 92 S.Ct. at 2192.
The next delay was occasioned by the fact that this set of indictments was quashed by the court along with all indictments rendered by the grand jury in late June. The circuit court opined that the grand jury was without authority because it had not been reconvened by order of the court. The merits of this order are not before us and we therefore express no opinion as to its propriety. It saves the state nothing if the error was the court's for our courts are equally charged by the Constitution of the United States with the responsibility of affording a speedy trial. United States v. Loud Hawk, 474 U.S. 302, 325, 106 S.Ct. 648, 661, 88 L.Ed.2d 640 (1986) (Marshall, J., Dissenting). We do note, however, that defendant moved to quash the indictment. As we do not reach the merits, we proceed on the assumption that this motion was with good cause and not for delay. For present purposes then, the delay caused by the quashed indictment will be attributed to the state. Again, however, this delay is the result of mere negligence and should not weigh heavily against the state.
*169 The final significant period of delay was caused by court docket congestion. This is a reason which weighs against the state, but not heavily. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. In summary then, the period of delay which should be weighed most heavily against the state is from July 5, the date that trial was originally to be had, and January 25, 1989, when the trial took place. The reasons for this period of delay are such that it does not weigh heavily against the state. Nevertheless, on balance, the "reason for the delay" factor in bringing Adams to trial weighs against the state.

Defendant's Assertion of His Right to a Speedy Trial
Adams made his first mention of speedy trial on November 21, 1988, on the day when trial was scheduled. Because of other matters scheduled for the same day trial could not be had. Although this was some 391 days after he was arrested, it was only thirty-five days after he had been re-indicted by the grand jury and only seven days after he waived arraignment and entered a not guilty plea. Adams' counsel rejected a tentatively offered trial the following week because of his schedule and expressed the desire that the trial be scheduled for January if it could not be tried that day. Adams made it clear that he was not willingly acquiescing in a failure to try him on that day. Through counsel he noted that:
I think for the record we would want to object to the District Attorney's motion to reschedule the case for a couple of reasons. First of all, the indictment that we're on right now in this case, this man has been indicted three separate times. He was indicted last year and that indictment was dismissed because it was an illegal multi-count indictment. Then he was indicted again and it was dismissed because it was taken up in a term that wasn't properly constituted. Now he's been re-indicted again for the third time.
The case has been set about five times ... [M]ostly what I'm saying is I want the Court to understand that we are not voluntarily joining in the motion for the continuance.
Although counsel spoke of a motion to reschedule, there was no such motion filed by the state. During the discussion it was explained that other matters which were older than Adams' case were scheduled and that the Thanksgiving holidays restricted the time available. Cases would be tried as they came up in line and the court was prepared to try all that it could within the term. It was explained that the usual procedure was that cases were tried as they came up and time was available and that when the end of the term was reached there would be an order entered continuing those cases not reached until the succeeding term. An understanding was reached that Adams would not be tried during that term and that his would be among the cases continued until the succeeding term. Counsel indicated that he would file a motion to dismiss for violation of Adams' statutory and constitutional rights to speedy trial at the January term.
At the end of the term, the court entered the order discussed, continuing the matters pending but not reached until the January term. The cases continued included two criminal cases with numbers lower than the number of Adams' initial indictment and several with numbers lower than the indictments on which the state was proceeding. In January, Adams filed his motion to dismiss, which was denied, and five days later he was tried and convicted.
Thus, it is seen that Adams never really asserted a right to a speedy trial. In essence, on November 21, 1988, Adams asserted that his right to speedy trial may have already been violated and, if anything, asserted a right to an instant trial. If no trial could be had instantly, Adams' counsels' conflicts as well as the court's docket dictated that the trial could not be had before January. Adams, of course, has no right to an instant trial. In January Adams sought dismissal, not trial, for it was clear that he would get a trial during that term. Dismissal was denied and he was tried.
In prior cases, this Court has considered a defendant's failure to request a trial an important part of the speedy trial analysis. *170 See, e.g., State v. Sistrunk, 404 So.2d 564 (Miss. 1981) (Defendants in no way protested or objected to continuances or even requested trial therefore motion to dismiss was premature); Carlisle v. State, 393 So.2d 1312 (Miss. 1981) (In addition to delays as a result of continuances, the defendant did not assert her right to a speedy trial.). In a more recent case, however, this Court indicated that in some circumstances, the failure to assert one's right to a speedy trial should be weighed against him lightly, if at all. Trotter, 554 So.2d at 317. Those special circumstances do not exist here, however, and we therefore give this factor "strong evidentiary weight." Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. at 2192.
Under the circumstances of this case, Adams' assertion of his speedy trial right affords him little because of the manner and the time in which it was raised. We weigh this factor against him in the balancing test.

Prejudice
In Trotter, 554 So.2d at 318, this Court adopted the following language:
Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety, in him, his family and his friends.' United States v. Marion, 404 U.S. 307, 320 [, 92 S.Ct. 455, 463, 30 L.Ed.2d 468] (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent .. .
See Moore v. Arizona, 414 U.S. 25, 26-27, 94 S.Ct. 188, 189-90, 38 L.Ed.2d 183 (1973) (quoting Barker, 407 U.S. at 537, 92 S.Ct. at 2195 (White, J., concurring)). Accord, Harvey v. State, 774 P.2d 87 (Wyo. 1989).
The state argues that "the defendant has not stated any prejudice to him that resulted from any of the delays. There is no assertion or offer of proof as to any loss of evidence or unavailability of witnesses... ." (Brief of Appellee at 9). Adams, on the other hand, asserts that he may have suffered prejudice because, inter alia, the witness about whom he raised the discovery dispute was not located before trial so that he could cross-examine him. This, however, is inconsequential because Bennett's statement to the police which was offered during the hearing on the Motion for New Trial does not indicate any exculpatory evidence. Actually, it follows closely the evidence offered by the state. In the end, Adams is left with only the presumptive prejudice alluded to above.

Balancing
We must now balance the factors  the reasons for the delay, prejudice and defendant's assertion of his right to speedy trial. Considering the absence of other than presumptive prejudice, Adams' failure until late to assert a speedy trial right, the fact that a significant part of the delay is attributable to Adams, and the balance to mere negligence, at best and court congestion, we conclude that Adams was not denied his constitutional right to a speedy trial.

CONCLUSION
For the foregoing reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, PITTMAN and McRAE, JJ., concur.
ROBERTSON, J., dissents by separate written opinion, joined by SULLIVAN, J.
ROBERTSON, Justice, dissenting:
I am of the opinion that the delay in this case offended Adams' constitutional right to a speedy trial, as the courts have articulated that right in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and progeny. Barker accepts what we must accept, that the constitutional language reflecting the right to a speedy trial permits of no precise construction nor mechanical application. The imperatives of principled adjudication nonetheless pretermit the whim or prejudice of the moment *171 and most assuredly command that we not allow generality of formulation to vaporize the right. To these ends, Barker and progeny decree a four-factor balancing test and commit it to the custody of those courts like ourselves on the front line of constitutional enforcement.
As all know, the four Barker factors are:
(1) The length of delay;
(2) The reason for delay;
(3) Whether the defendant asserted his right to a speedy trial; and
(4) Whether the defendant has been prejudiced by the delay.
No one factor is, in itself, dispositive. Rather, the factors must be considered and assessed, objectively and dispassionately, then weighed and balanced together. See, e.g., Flores v. State, 574 So.2d 1314, 1322 (Miss. 1990); Trotter v. State, 554 So.2d 313, 316 (Miss. 1989); Smith v. State, 550 So.2d 406, 408 (Miss. 1989); Kinzey v. State, 498 So.2d 814, 816 (Miss. 1986); Burgess v. State, 473 So.2d 432, 433 (Miss. 1985); Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985).

I.

Length of Delay
The constitutional speedy trial clock begins to run on the date of arrest. Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Jaco v. State, 574 So.2d 625, 629 (Miss. 1990); Smith v. State, 550 So.2d at 408; Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986); Burgess v. State, 473 So.2d at 433. Adams was arrested on October 26, 1987. He was brought to trial on January 25, 1989, some 456 days later. A delay of this duration is presumptively prejudicial, albeit rebuttably so, and presumptively violative of the accused's right to a speedy trial. See State v. Ferguson, 576 So.2d 1252, 1254 (Miss. 1991) (288 days); Flores v. State, 574 So.2d at 1322 (any delay of eight months or longer is presumptively prejudicial); Jaco v. State, 574 So.2d at 630 (414 days); Smith v. State, 550 So.2d at 408 (370 days); Beavers v. State, 498 So.2d 788, 790 (Miss. 1986) (423 days); Bailey v. State, 463 So.2d at 1062 (298 days). See also, Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975).
The majority correctly states a delay of 456 days is presumptively prejudicial requiring further examination of the three other Barker factors. Barker, 407 U.S. at 530, 92 S.Ct. at 2191-92. It means as well that, without more, the defendant's claim prevails if the state fails to rebut the presumption of prejudice:
The presumption guarantees a dismissal of the charges only in face of the state's failure to advance either evidence or argument in support of its burden to show there has been no violation of the defendant's speedy trial right.
Salandre v. State, 111 N.M. 422, 429, 806 P.2d 562, 569 (1991). Of more practical significance, this means that the prosecution bears the risk of non-persuasion on the other issues under Barker. See State v. Ferguson, 576 So.2d at 1254; Vickery v. State, 535 So.2d at 1375; Reed v. State, 506 So.2d 277, 281 (Miss. 1987); Turner v. State, 383 So.2d 489, 491 (Miss. 1980).

II.

Reason for Delay
Bearing in mind that the prosecution bears the risk of non-persuasion  more conventionally but less precisely, the prosecution has the burden of proof  we find one delay chargeable to Adams. On April 28, 1988, the Court granted Adams a continuance at his request until July 5, 1988. This is 66 days. When we subtract 66 from 456, we find 390 days delay still unjustified.
The majority then breaks the delay down into four segments:
(a) That between arrest and arraignment. Common sense suggests that Adams was likely not ready for trial during this time. This delay should be given minimal consideration, but is the beginning and may not be wholly ignored.
(b) The two months delay between arraignment  February 22, 1988, and Adams' motion for a continuance  April 28, 1988. There is nothing before us showing why *172 Adams could not have been tried during this period. I say this in the context of our many cases holding an accused has no right to complain where he is put to trial within but a few days of indictment. See, e.g., Morris v. State (Miss. No. 07-KA-58857, dec. Feb. 27, 1991) (not yet reported); Shaw v. State, 378 So.2d 631, 633-34 (Miss. 1979). As the burden of producing evidence and the risk of non-persuasion lie with the prosecution, this delay may not be charged to Adams. Because (as will be seen) the indictment was flawed (not Adams' fault), the case could not have been tried during this period.
(c) After the continuance Adams sought, we pick up on June 30, 1988, when the prosecution had Adams reindicted. We are concerned with the delay from June 30, 1988, through October 17, 1988. What happened during this time was, first, that the prosecution abandoned its original multi-count indictments in favor of two singlecount indictments. In point of fact, the prosecution presented and had entered an order of nolle prosequi on the first multi-count indictment. Following the reindictment, Adams moved to quash. The Court again found the indictment flawed and granted the motion. The grand jury indicted Adams for the third time on October 10, 1988.
The majority says the first erroneous indictment produced a delay "caused by mere negligence." Similarly, we blame the second erroneous indictment on "mere negligence." The more important point is that Adams did not cause these delays. They are solely attributable to and charged to the prosecution and the state. While I would concede Barker directs that these delays "should not weigh heavily against the state," the inescapable fact is that these delays do weigh against the state. Barker, 407 U.S. at 531, 92 S.Ct. at 279, 33 L.Ed.2d at 117; People v. Sims, 47 Ill. App.3d 215, 5 Ill.Dec. 625, 626, 361 N.E.2d 1153, 1154 (1977); People v. Simpson, 30 Cal. App.3d 177, 106 Cal. Rptr. 254, 258 (1973). This is particularly important in light of the presumption of prejudice flowing from the length of delay.
(d) The final period is that between December 2, 1988, and trial on January 25, 1989. The majority correctly notes that this delay "was caused by court docket congestion." They cite Barker correctly for the proposition that this delay "weighs against the state but not heavily." Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.
The sum and substance of the delays, other than the 66-day delay caused by Adams' motion for continuance is that the entire time is chargeable to the prosecution and the state. The fact that, under Barker, the time does not weigh heavily against the prosecution cannot be seen to avoid the fact that it does weigh against the prosecution and is in no way chargeable to Steven Allen Adams.

III.

Defendant's Assertion of Right to Speedy Trial
Barker declares that an accused has no duty to bring himself to trial. Barker v. Wingo, 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d at 115. We have repeatedly accepted this premise. See, e.g., State v. Ferguson, supra; Flores v. State, 574 So.2d at 1318; Jaco v. State, 574 So.2d at 632; Vickery v. State, 535 So.2d at 1377; Williamson v. State, 512 So.2d 868, 877 (1987); Turner v. State, 383 So.2d at 491. Yet the majority says, "Adams never really asserted a right to a speedy trial ... [and] weigh[s] this factor against him ... ." and relies heavily on this fact. This seems inconsistent with the premise just noted. It seems odd under today's facts. Adams had a trial setting on December 2, 1988. He cannot be faulted for failing to demand a speedy trial in the days leading up to that date. He had no way of knowing the Court would continue his case. Between June 30 and October 17, the prosecution labored under the burden of bad indictments. I know of no law that says we can force an accused to forego his right to proper indictment on pain of forfeiting his right to a speedy trial.

*173 IV.

Prejudice
The majority quotes from Trotter v. State, 554 So.2d at 318, where this Court followed the United States Supreme Court's articulation of a presumption of prejudice.
Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety, in him, his family and his friends." United States v. Marion, 404 U.S. 307, 320 [, 92 S.Ct. 455, 463, 30 L.Ed.2d 468] (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent....
See Moore v. Arizona, 414 U.S. 25, 26-27, 94 S.Ct. 188, 189-90, 38 L.Ed.2d 183 (1973) (quoting Barker, 407 U.S. at 537, 92 S.Ct. at 2195, 33 L.Ed.2d at 121 (White, J., concurring)). See also, Flores v. State, 574 So.2d at 1323; Jaco v. State, 574 So.2d at 632-33. I would emphasize here, that in our present setting, where the delay has been presumptively prejudicial, the burden, i.e., the risk of non-persuasion, falls upon the prosecution. Prince v. Alabama, 507 F.2d at 707. Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), states:

Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.
Moore, 414 U.S. at 26, 94 S.Ct. at 189, 38 L.Ed.2d at 185; see also, State v. Ferguson, 576 So.2d at 1255; Jaco v. State, 574 So.2d at 633; Trotter v. State, 554 So.2d at 318.
There is a further factor. Adams was put to trial on January 25, 1989, for something he is said to have done on July 26, 1987. Of importance, his crime is not of the sort the prosecution proves (even in part) by objective physical facts. The fifteen-year-old victim suffered no physical injury. No medical reports, photographs, or other documentary evidence appear in this case. This is a case without evidence not subject to the ravages time inflicts upon the human memory. To the contrary, the case for the prosecution stood or fell on the largely uncorroborated memory of a single witness. I do not doubt that such testimony may legally sustain a conviction. In cases of this sort, we should be loathe to relax legal imperatives for a prompt and speedy trial.

V.

Reconciliation of the Factors
We confront a delay  456 days  that the law holds presumptively prejudicial. A 66-day segment of that delay is chargeable to Adams. The remainder is presumptively charged to the state and to the prosecution. When we look at the evidence to see whether the presumption has been rebutted, we find the opposite  that it has been reinforced. The delays incident to the two flawed attempts to indict Adams are, in the majority's words, attributable to the negligence of the prosecution. The final delay is court congestion which, however fervently we may wish it otherwise, Barker says it is chargeable to the prosecution. In the words of the Barker court:
Overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.
Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. And as Justice White put it in his Barker concurring opinion:
Unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the state's criminal justice system are limited and that each case must await its turn. As the court points out, this approach also subverts the state's own goals in seeking to enforce its criminal laws. *174 Barker, 407 U.S. at 538, 92 S.Ct. at 2195, 33 L.Ed.2d at 121.
I respectfully dissent.
SULLIVAN, J., concurs.
NOTES
[1] Because Adams managed to quash or have some indictments dismissed, we will use the original arraignment as the starting point for calculations. If the number of days from this point until trial equals less than 270, then, ipso facto, any time periods after subsequent arraignments also would have been less than 270 days.