# IN THE COURT OF APPEALS 12/3/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-KA-00246 COA

**DEVON ADAMS**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. HENRY ROSS

COURT FROM WHICH APPEALED: CHOCTAW COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

KEVIN RAY NULL

ATTORNEYS FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: WAYNE SNUGGS

DEWITT T. ALLRED III

DISTRICT ATTORNEY: DOUG EVANS

NATURE OF THE CASE: CRIMINAL/SALE OF COCAINE

TRIAL COURT DISPOSITION: SALE OF COCAINE: SENTENCED TO SERVE A TERM OF 40 YRS IN THE MDOC, PAY A FINE OF $1,000.00 AND $425.00 LAB FEE TO THE NORTH MISSISSIPPI CRIME LAB

BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:


SUMMARY

Devon Adams appeals his conviction of the sale of cocaine, raising the following issues as error:

**I. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN ADAMS' MOTION TO DISMISS FOR LACK OF A SPEEDY TRIAL.**


**II. THE TRIAL COURT ERRED BY RESTRICTING THE CROSS-EXAMINATION OF STIRLING GATES.**


**III. THE TRIAL COURT ERRED IN REFUSING TO GRANT THE LESSER-INCLUDED INSTRUCTION OF POSSESSION OF COCAINE.**


Finding no error, we affirm.


FACTS


On July 1, 1992 Choctaw County officers and members of the North Central Narcotics Task Force attempted to purchase crack cocaine from Adams. Stirling Gates, a confidential informer with the task force, approached Adams in Barbara's Beauty Salon in Choctaw County. Gates asked Adams if he could purchase cocaine from Adams. Gates told Adams that he needed the crack cocaine for a relative of his who was coming into town later that evening. Adams agreed to the purchase but said that Gates would have to wait until Adams finished work.

Gates and Kary Ellington, an undercover officer, met Adams at the salon after work. Adams stated that he would need transportation to obtain the cocaine, so Gates told Adams that Dennis Gladney, who was also a confidential informant, would take Adams wherever he needed to go. Gates and Ellington left to pick up Gladney and returned to the salon, where they left Gladney in his own car. Gladney took Adams to meet Gates and Ellington at a roadside park in Choctaw County. At this time, Gates introduced Ellington as a relative who wanted the crack cocaine. Gates then asked Adams if he would be able to provide the cocaine. Adams replied that he could, but he would need the money first. Gates gave Adams $100.00, and Adams and Gladney then drove to Ethel, Mississippi, to buy the cocaine.

About two hours later, Gates and Ellington met Adams and Gladney at the beauty salon. Ellington approached the passenger side of the vehicle driven by Gladney, and Adams gave Ellington the cocaine he had purchased. This transaction took place approximately 400 feet from Ackerman Elementary School.

ANALYSIS

**I. THE TRIAL COURT ERRED IN FAILING TO GRANT ADAMS'**

**MOTION TO DISMISS FOR LACK OF A SPEEDY TRIAL.**

The police arrested Adams on August 19, 1992. On February 15, 1993, the next term of court, Adams was reindicted after the State discovered that the violation occurred within 1,500 feet of a school. Adams had also been indicted for a similar crime which occurred on July 2, 1992. Because both indictments could not be tried in the same term of court, the State decided to proceed with the July 2 offense and continue the instant case until the next term of court. Adams made no objection to the continuance. Adams was convicted of the July 2 offense and incarcerated.

The instant case was scheduled to proceed in August of 1993; however Adams decided to change attorneys. His new attorney, Kevin Null, filed a motion for a continuance, and the case was again continued until the next term of court in February 1994. On February 14, 1994, Adams' attorney filed a motion to dismiss for lack of speedy trial. The motion was denied. The trial took place on February 28, 1994. Adams now claims that the lower court erred in failing to dismiss the case for lack of a speedy trial.

The right to a speedy trial attaches at the time of a formal indictment, or information, or where there is restraint imposed by an arrest. *Handley v. State*, 574 So. 2d 671, 674 (Miss. 1990); *Lightsey v. State*, 493 So. 2d 375, 378 (Miss. 1986). Adams' right to a speedy trial attached at the time of the indictment, August of 1992.

In order to determine whether Adams' right to a speedy trial was violated, we must utilize the balancing test in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The *Barker* case set out four factors that a court must consider in making a speedy trial analysis: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.; see also Jaco v. State*, 574 So. 2d 625, 630 (Miss. 1990).

1. The Length of the Delay

In Mississippi, a delay of eight months or longer is presumptively prejudicial. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989) (citations omitted). The delay between Adams' arrest and trial was presumptively prejudicial since it was over eighteen months long. Accordingly, we must examine the other *Barker* factors.

2. The Reasons for the Delay

As the trial court recognized in overruling the motion to dismiss, the case was not tried during the August 1992 term since the indictment was returned during that term. Additionally, Adams made no

motion to be tried during the August 1992 term. Since the State found new evidence against Adams, the State decided to reindict him during the next term of court in February, 1993. At this time, Adams was also under indictment for an additional similar charge. Because both cases could not be tried in the same term of court, the instant case was set for trial during the next term of court, August of 1993. Adams then asked for a continuance until February of 1994.

Adams claims that the reindictment was a deliberate attempt to delay the trial. A deliberate attempt to delay the trial for tactical advantage is weighed heavily against the State. However, more neutral reasons such as negligence or overcrowded courts are not weighed as heavily against the State. *See, e.g., Barker*, 407 U.S. at 531; *State v. Magnusen*, 646 So. 2d 1275, 1281-82 (Miss. 1994). Here, the State's subsequent discovery of the proximity of the sale to the school was merely a negligent oversight and should not be weighed heavily against the State. *Adams v. State*, 583 So. 2d 165, 169 (Miss. 1991). Further, six months of the delay is attributable to Adams, since he requested the final continuance. *Wiley v. State*, 582 So. 2d 1008, 1011-12 (Miss. 1991); *Handley v. State*, 574 So. 2d 671, 674 (Miss. 1990).

The trial court found that the delay had been the result of Adams' own conduct and for good cause. If the trial court's finding of fact that the delay was the result of good cause is supported by substantial credible evidence, this Court will not disturb that ruling on appeal. *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991). "A finding of good cause is a finding of ultimate fact." *Id.* Since there was substantial evidence supporting this finding, we will not second guess the trial court. Since the bulk of the delay was caused by neutral reasons, this factor weighs only slightly in favor of Adams.

3. The Defendant's Assertion of his Right

Adams did not file a motion for speedy trial until January 1, 1994, during the delay caused by his requested continuance. Furthermore, the motion for a speedy trial was filed right before the term of court during which the case was scheduled to be tried. Adams had no right to an immediate trial at the very moment at which he suddenly decided that he wanted it--during the delay caused by his requested continuance. *Adams v. State*, 583 So. 2d 165, 169 (Miss. 1991). At the time he filed his motion, there was no way to try the case any more quickly than it was set because the court was not in term. Adams filed a motion to dismiss in February, less than one month before trial. A motion to dismiss for violation of the right to a speedy trial is not equivalent to a demand for a speedy trial. *Perry v. State*, 637 So. 2d 871, 876 (Miss. 1994); *Adams*, 583 So. 2d at 170. Because of the time and manner in which he asserted his right to speedy trial, we must weigh this factor against Adams.

4. Prejudice to the Defendant

Adams must show some prejudice in order to prove a constitutional speedy trial violation. *Magnusen*, 646 So. 2d at 1284. Prejudice encompasses interference with a defendant's liberty and actual prejudice in defending his case. *Id.* During the majority of the delay, Adams was incarcerated on another conviction, and therefore, he was not deprived of his liberty as a result of the State's failure to bring him to trial sooner. Further, Adams has failed to show any prejudice in defending his case. Since there was only a presumptive showing of prejudice, this factor weighs heavily in favor of the State. *Id.*

After balancing the *Barker* factors, this Court finds that Adams' right to a speedy trial was not

violated.

## II. THE TRIAL COURT ERRED IN RESTRICTING CROSS-EXAMINATION

## OF STIRLING GATES.

Stirling Gates, a confidential informant, was asked on cross-examination, "You testified that you had worked for four years as an undercover informant for the Task Force. How did you become involved with the Task Force?" The State objected, arguing that the reason Gates became involved with the Task Force was irrelevant to Adams' trial on the cocaine charge.

Outside of the jury's presence, the defense proffered the information he wished to elicit from Gates, which consisted of a charge of embezzlement for which Gates had never been convicted. The defense argued that Gates became involved with the task force because his previous employer had told Gates that he would drop the embezzlement charge if Gates would become a confidential informant. The defense asserted that this testimony was admissible under Mississippi Rule of Evidence 608(b) for purposes of attacking Gates' credibility. In other words, the theft was a specific instance of conduct other than a conviction which was probative of Gates' untruthfulness. After hearing both arguments, the trial court ruled that the prejudicial effect of the evidence would outweigh any probative value.

Under Rule 608(b), the trial court has the discretionary authority to permit cross-examination as to a witness' specific acts of misconduct if the misconduct bears upon the witness' character for truthfulness. M.R.E. 608(b); *Brent v. State*, 632 So. 2d 936, 944 (Miss. 1994). "Admission of evidence of past conduct poses special hazards and danger, and should only be admitted when it is necessary to do so to 'ascertain the truth,' and unfair prejudice is not imposed, especially upon the accused." *Brent*, 632 So. 2d at 945.

The trial court found that the evidence of past misconduct was inadmissible since it was so remote in time and totally irrelevant to the instant case. Since the trial court acted entirely within his discretion under Rule 608(b), we refuse to disturb his ruling on the matter.

## III. THE TRIAL COURT ERRED IN FAILING TO GRANT

## ADAMS' REQUEST FOR A LESSER- INCLUDED OFFENSE

## INSTRUCTION OF POSSESSION OF COCAINE.

Adams argues that the trial court erred in refusing to allow him to present a lesser included offense to the jury, namely possession of cocaine. In *Griffin v. State*, 533 So. 2d 444, 447 (Miss. 1988) (citations omitted), our supreme court stated:

> A lesser-included offense instruction should only be granted if there is an evidentiary basis therefor in the record. The test has been fleshed out in *Harper v. State*, 478 So. 2d 1017 (Miss. 1985):

[A] lesser included offense instruction should be granted unless the trial judge--and ultimately this Court--can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

Further,

To have been entitled to a lesser included offense instruction, it was incumbent upon [the Appellant] to point to some evidence in the record from which a jury could, other than by mere surmise, find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser included offense.

*Toliver v. State*, 600 So. 2d 186, 192 (Miss. 1992).

There was no evidentiary basis to support a lesser-included instruction, and the trial court was correct in denying it. Adams testified repeatedly that he never had the cocaine in his possession; however, he did testify that he was involved in getting the buyer and seller together. He even admitted taking money from Gates for finding the seller. If the jury had chosen to believe Adams' testimony and disregard the testimony presented by the State, then it could not have found that Adams was guilty of the lesser offense of possession while at the same time finding that he was not guilty of the offense of transfer. Even if the jury chose to believe Adams' testimony, the jury could only have found that he was an accessory before the fact, and therefore, a principle to the sale of cocaine. We find that this issue has no merit.

**THE JUDGMENT OF THE CHOCTAW COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE WITHIN 1500 FEET OF A SCHOOL BUILDING AND SENTENCE TO FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000.00 IS AFFIRMED. SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONCURRENTLY TO SENTENCE IMPOSED IN CAUSE NO. 2087 AND CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED. ALL COSTS ARE ASSESSED TO CHOCTAW COUNTY.**

**FRAISER, C.J., BRIDGES, P.J., BARBER, COLEMAN, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**