755 So.2d 426 (1999)
Jessie BINGHAM, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01538 COA.
Court of Appeals of Mississippi.
January 26, 1999.
Rehearing Denied May 4, 1999.
*428 Dan W. Duggan, Jr., Brandon, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
EN BANC.
THOMAS, P.J., for the Court:
¶ 1. Jessie Bingham appeals to this Court his conviction of two counts of burglary in the Hinds County Circuit Court of the First Judicial District. From that conviction, Bingham was sentenced to serve a term of seven years on each count with Count II to run consecutively to Count I with the Mississippi Department of Corrections. Feeling aggrieved, Bingham assigns the following issues as error:
I. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL.
II. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTION FOR A MISTRIAL UPON IMPROPER COMMENTS BY PROSECUTION DURING CLOSING ARGUMENTS.
III. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTIONS FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. During the early morning hours of December 30, 1995, two vehicles were burglarized on Broadmoor Drive in Jackson, Mississippi. While on routine patrol, Jackson Police Officer Michael Ivy and Jackson Reserve Officer Terry Mayfield observed a gray Pontiac with its motor and lights on while parked in the middle of Broadmoor Drive. The officers testified that as they pulled up to the Pontiac they illuminated it with their "take-down" lights believing that someone was having car trouble. The officers testified that as they were opening their doors to investigate an individual exited a maroon Oldsmobile parked next to the Pontiac, immediately entered the Pontiac, and drove off.
¶ 4. Based on this suspicious activity the officers followed the Pontiac and ran a National Crime Information Center (NCIC) computer check on the Pontiac. *429 While following the Pontiac, the officers observed the car run a stop sign at which time they turned on their blue lights and sirens. The Pontiac then began to flee at a high rate of speed. After a lengthy high speed chase, which reached speeds in excess of 120 m.p.h., the vehicle eventually came to a stop, and the driver fled the vehicle. Officers Ivy and Mayfield gave chase to the individual, and Officer Ivy eventually caught and subdued the individual. At trial Officers Ivy and Mayfield identified Jessie Bingham as the individual who fled from them at Broadmoor Drive and as the individual who fled the vehicle after the high speed chase. An inventory of Bingham's vehicle revealed several carpentry tools behind the driver's seat.
¶ 5. After taking the suspect into custody, Officers Ivy and Mayfield returned to Broadmoor Drive and discovered a van with its rear doors open. The officers awoke Adrian Williams, the owner of the van, and asked him to inspect his vehicle. Williams discovered that several of his carpentry tools were missing from his van. Eula Mae Wheat, the owner of the maroon Oldsmobile, was also awakened to inspect her vehicle. She discovered several scratches on the in-dash radio but nothing was missing. Both Williams and Wheat testified that their vehicles were parked outside their residences and that permission to enter their vehicles or the removal of items within their respective vehicles had not been given to anyone. The carpentry tools recovered from Bingham's vehicle were subsequently returned to Williams at the Jackson Police Department since they were needed in his occupation.
¶ 6. Bingham refuted the testimony of Officers Ivy and Mayfield and maintained that he was already in his Pontiac when the officers approached his vehicle. Bingham testified that he and another person, an unidentified male, had been "getting high" and drinking throughout the previous day and into the night in question. Bingham testified that he did not know this individual nor did he know the individual's name. Bingham further testified that he and his unidentified companion went "to get some more money to get high." Bingham testified that he and his companion went to Broadmoor Drive and that his companion left Bingham's vehicle while Bingham remained in the driver's seat. Bingham testified that his companion returned a short time later with some tools and then left again. According to Bingham, after his companion left and failed to return, he began backing up in an effort to locate his companion and that it was then that the police pulled in behind him. Bingham testified that he drove off because he had some outstanding traffic tickets. Bingham further maintained that at no time did he ever enter either Williams's or Wheat's vehicles.

ANALYSIS

I.

THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL
¶ 7. Bingham argues that his right to a speedy trial on United States Constitutional grounds was violated and that the trial court committed error in denying his motion to dismiss. Bingham filed two motions to dismiss for failure to provide a speedy trial. Bingham filed his first motion to dismiss, pro se, on April 1, 1997. A second motion to dismiss for failure to provide a speedy trial was filed on August 21, 1997 by Bingham's defense counsel. We note from the outset that several of the motions and orders for the many continuances requested and granted over the course of the proceedings are not included in the clerk's papers. However, we have constructed a case chronology from the dates stated in the transcripts and the record as submitted to this Court.

*430
 Chronological Order of Events for Speedy Trial Analysis
 Delay Following
Date Event the Event
12/30/95 Commission of the crime and arrest. 103[1]
04/11/96 Filing of indictment. 32
05/13/96 Arraignment. Motion for mental evaluation. Trial
 set for 07/17/96. 45
06/27/96 Order for mental evaluation. 20
07/17/96 Continuance due to mental evaluation. Trial reset
 for 09/11/96. 54
09/09/96 Continuance due to mental evaluation. Trial reset
 for 11/05/96. 43
10/22/96 Continuance due to mental evaluation. Trial reset
 for 01/08/97. 78
01/08/97 Continuance due to defendant's request for new
 counsel. Trial reset for 03/05/97. 56
03/05/97 Continuance due to crowded court docket. Trial
 reset for 08/07/97. 155
08/07/97 Continuance due to crowded court docket. Trial
 reset for 09/30/97. 54
09/30/97 Trial. 0
 TOTAL NUMBER OF DAYS ELAPSED 640

¶ 8. A total of 640 days elapsed between Bingham's arrest and trial. Bingham argues that this delay is a violation of his Sixth Amendment right to a speedy trial under the United States Constitution and under Section 26 of the Mississippi Constitution. The important dates are as follows: Bingham was arrested on December 30, 1995; indicted on April 11, 1996; arraigned on May 13, 1996, and brought to trial on September 30, 1997.
¶ 9. Under the United States Constitution, an accused's right to a speedy trial attaches and begins to run "at the time of formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." Handley v. State, 574 So.2d 671, 674 (Miss. 1990) (quoting Lightsey v. State, 493 So.2d 375, 378 (Miss.1986)). See also Vickery v. State, 535 So.2d 1371, 1376 (Miss.1988). In Smith v. State, 550 So.2d 406, 408 (Miss.1989), our supreme court held that for constitutional purposes, the right to a speedy trial attaches and time begins to run with arrest. Therefore, Bingham's Sixth Amendment right to a speedy trial began to run on December 30, 1995, the date of his arrest.
¶ 10. "Once the constitutional right to a speedy trial has attached, this Court must examine the facts of the case and engage in a functional analysis of those facts in accordance with Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether the constitutional right to a speedy trial has been denied." Handley, 574 So.2d at 674. Under *431 Barker, four factors were identified for consideration while acknowledging that additional considerations would likewise be pertinent:
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.
Barker, 407 U.S. at 533, 92 S.Ct. 2182.
¶ 11. In other words, "the weight given each necessarily turns on the particular facts and circumstances of each case, the quality of the evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion. No one factor is dispositive." Jaco v. State, 574 So.2d 625, 630 (Miss.1990). The factors that must be considered are (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) the prejudice resulting to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182.

A. Length of the Delay
¶ 12. Unless the delay is presumptively prejudicial, no further inquiry is required. Id. In Bingham's case the delay between arrest and trial was 640 days or approximately twenty-one (21) months. The Mississippi Supreme Court has held that a delay of eight (8) months or more is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). Clearly a delay of twenty-one (21) months is presumptively prejudicial, and further inquiry into the remaining Barker factors is required.

B. Reason for the Delay
¶ 13. When delays in bringing the accused to trial are the result of the actions of the State, without "good cause," those delays are counted against the State. Where delays are attributable to the defendant's actions, those delays toll the running of time. Spencer v. State, 592 So.2d 1382, 1387 (Miss.1991); Vickery v. State, 535 So.2d 1371, 1375 (Miss.1988); Perry v. State, 419 So.2d 194, 199 (Miss.1982). "A delay caused by the actions of the defendant, such as continuances, tolls the running of the time period for that length of time, and is subtracted from the total amount of the delay." Taylor v. State, 672 So.2d 1246, 1259 (Miss.1996).
¶ 14. Of the 640 days between Bingham's arrest and trial, 296 days are tolled due to the actions of Bingham. These 296 days elapsed between May 13, 1996 and March 5, 1997. This 296 day delay was the result of Bingham's request for a mental evaluation on May 13, 1996, and his request for new counsel on January 8, 1997. The January 8, 1997 request for new counsel resulted in the fourth continuance since the original trial setting of July 7, 1996. Thus, the running of time was tolled for 296 days and is weighed against Bingham.
¶ 15. Bingham's trial was reset from January 8, 1997 to March 5, 1997. However, on March 5, 1997 the trial was once again continued and reset for August 7, 1997 due to a crowded docket. This period of delay, March 5, 1997 to August 7, 1997, accounts for 155 days. On August 7, 1997, Bingham's trial was continued once again and reset for September 30, 1997 due to a crowded docket. This period of delay, August 7, 1997 to September 30, 1997, accounts for 54 days. When the periods of delay resulting from docket congestion are totaled, 209 days elapsed.
¶ 16. Although our supreme court has held that delays resulting from docket congestion are to be weighed against the State, our supreme court has likewise held that the periods should not be weighed as heavily as would delays which result from State action without "good cause." Adams v. State, 583 So.2d 165, 169 (Miss.1991). Under Barker, different reasons for delay should produce different weights and *432 should be assigned accordingly. Barker, 407 U.S. at 531, 92 S.Ct. 2182. Holdings by the Mississippi Supreme Court enforce this proposition. Delays resulting from docket congestion can constitute neutral reasons under the Barker analysis. Hurns v. State, 616 So.2d 313, 318 (Miss. 1993). Docket congestion can furnish "good cause" for delay. McGee v. State, 608 So.2d 1129, 1133 (Miss.1992).
¶ 17. We note that of the six previous trial settings prior to the final setting of September 30, 1997, the State was prepared and ready to proceed at all times. Bingham was responsible for four continuances prior to the two docket congestion continuances of March 5, 1997 and August 7, 1997. In light of the holdings in Hurns and McGee in conjunction with the actions of Bingham, this delay does not weigh against the State.

C. Defendant's Assertion of His Right to a Speedy Trial
¶ 18. Of the four Barker factors, the third factor is afforded "strong evidentiary weight." Barker, 407 U.S. at 531, 92 S.Ct. 2182. Despite the State's duty to insure that the defendant receives a speedy trial, the defendant bears some responsibility to assert this right. Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996). "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 532, 92 S.Ct. 2182. See Adams, 583 So.2d at 169 (stating that failure of a defendant to request a trial is an important part in speedy trial analysis). In the case sub judice this assertion has not been shown.
¶ 19. Bingham first raised the issue of his right to a speedy trial on April 1, 1997 in a pro se motion to dismiss for violation of his right to speedy trial. This motion came 458 days after his arrest. A second motion to dismiss for violation of his right to speedy trial was filed on August 21, 1997 by Bingham's defense counsel. This motion came 637 days after his arrest. Neither the April 1, 1997 pro se motion nor the August 21, 1997 motion were assertions or demands for a speedy trial, rather both motions were demands for dismissal for violation of his right to a speedy trial. The Mississippi Supreme Court has previously acknowledged the distinct difference between a demand for a speedy trial and a demand for dismissal for a speedy trial violation. "A demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for a speedy trial. Such a motion seeks discharge not trial." Perry v. State, 637 So.2d 871, 875 (Miss.1994); see Adams, 583 So.2d at 170. We weigh this factor against Bingham.

D. Prejudice to the Defendant
¶ 20. In the Barker analysis, three elements of prejudice are to be considered: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. 2182. In addressing this factor, our supreme court has adopted the following language:
Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety, in him, his family and his friends." These factors are more serious for some than for others, but they are inevitably present in every case to some extent....
Trotter v. State, 554 So.2d 313, 318 (Miss. 1989) (citations omitted).
¶ 21. It is Bingham's contention, as alleged in his pro se motion to dismiss of April 1, 1997 and in his appeal brief to this Court, that while he was incarcerated and awaiting trial he suffered mistreatment and was subjected to an unjust mental evaluation. It should be quickly noted *433 that Bingham subjected himself to a mental evaluation by requesting the same.
¶ 22. Bingham maintains that the length of his pretrial incarceration alone is a sufficient showing to require the State to meet its burden of demonstrating that he suffered no prejudice. Bingham makes no assertions of an impaired defense and only a vague assertion that he has suffered anxiety while awaiting trial. Reviewing Bingham's assertions of prejudice, he is left with only the presumptive prejudice alluded above. Adams, 583 So.2d at 170.
¶ 23. In short, Bingham has failed to show any prejudice other than the length of his pretrial incarceration. Having reviewed all of the Barker factors in their entirety and after reviewing the totality of the circumstances in this case, we conclude that this delay was fair and resulted in no prejudice to Bingham.

II.

THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTION FOR A MISTRIAL UPON IMPROPER COMMENTS BY PROSECUTION DURING CLOSING ARGUMENTS
¶ 24. Bingham argues that during closing arguments the State made improper references, over the sustained objections of the defense, concerning several items not entered into evidence, and that the trial court erred in denying Bingham's motion for mistrial. During closing arguments the State made references to carpentry tools recovered from Bingham's vehicle during his arrest. The recovered tools matched the description of the tools stolen from Williams's van.
¶ 25. We must note from the outset that it was at Bingham's insistence during his cross-examination of Williams, while serving as his own attorney in the State's case-in-chief, that the tools be produced. The following day the State, after it had rested and in response to Bingham's previous questioning of Williams, unsuccessfully attempted to introduce Williams's carpentry tools into evidence during the cross-examination of Bingham. While Bingham admitted that there were some tools recovered from his vehicle, he failed to identify the carpentry tools the State sought to introduce through his testimony. Therefore, the carpentry tools were only marked for identification.
¶ 26. During closing arguments Bingham, himself, made reference to the very carpentry tools not in evidence:
All right. They go back, and purportedly this Williams guy says, yeah, those are my tools or whatever, but they never introduce any of the tools to show you to let you look at them. These things right here they brought in today are not evidence. Even Officer Ivy said it appeared to be, but he's not sure.
¶ 27. Bingham then later objected when the State made similar references:
They say they don't have any evidence. They didn't have the tools. Yesterday they went on and on about the tools, so Mr. Williams brought the tools today. There's nothing down there. No evidence. These are the tools. He brought them today 
BY MR. DUGGAN:Your honor, I'm going to object. Those weren't entered into evidence, and I'm going to object to any waving the tools up there in front of the jury.
BY THE COURT: Sustained.
¶ 28. Despite the similar references made by both Bingham and the State concerning the carpentry tools, reference to matters outside the record are, nevertheless, improper. This applies equally to all parties. However, we fail to see how these references resulted in prejudice to Bingham given the circumstances surrounding this matter. After a review of the closing arguments as a whole, it is readily apparent that it was Bingham who prompted the State's response to the carpentry tools after he made the initial reference to them in his closing argument. In essence Bingham *434 opened the door. The State had not made any reference to the tools during its initial closing argument. The State's only references to the tools were in response to Bingham's previous comments.
¶ 29. Therefore, we cannot conclude that the references were anything other than harmless error. The jury had been properly instructed to consider only the evidence contained in the record, and as such we cannot agree that any prejudice resulted considering that Bingham's objection to the State's references was sustained.

III.

THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTIONS FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE
¶ 30. Bingham argues that the trial court erred in denying his motion for a directed verdict, his motion for judgment notwithstanding the verdict, and his motion for a new trial. Bingham argues that the State failed to make a prima facie case and that the jury's verdict was clearly against the overwhelming weight of the evidence. Bingham maintains that the State failed to establish the requisite elements of the crimes as charged.
¶ 31. In a motion for a judgment notwithstanding the verdict the correct challenge pertains to the sufficiency of the evidence supporting the jury's verdict of guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Our standard of review in issues of the sufficiency of evidence is clear:
[T]he evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Bingham's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Jones v. State, 669 So.2d 1383, 1388 (Miss. 1995) (quoting McClain, 625 So.2d at 778.
¶ 32. The trial court also denied Bingham's motion for a new trial. In a motion for a new trial the weight of the evidence is challenged. Butler v. State, 544 So.2d 816, 819 (Miss.1989). Our supreme court has stated:
As to motion for a new trial, the trial judge should set aside the jury's verdict only when, in the exercise of his sound judgment he is convinced that the verdict is contrary to the substantial weight of the evidence; this Court will not reverse unless convinced the verdict is against the substantial weight of the evidence.
Id. (quoting Russell v. State, 506 So.2d 974, 977 (Miss.1987)).
¶ 33. Clearly the jury was presented with conflicting theories and as such "is the judge of the weight and credibility of the testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell v. State, 506 So.2d 989, 992 (Miss.1987). We cannot conclude that the evidence presented to the jury was such that reasonable and fairminded jurors could only find the accused not guilty nor is it evident that the evidence was so insufficiently weighted as to require a new trial. This assignment is without merit.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION ON COUNTS I AND II OF BUSINESS BURGLARY AND SENTENCES OF SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS *435 ON EACH COUNT IS AFFIRMED. SENTENCE ON COUNT II SHALL RUN CONSECUTIVE TO COUNT I. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
BRIDGE, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, KING, PAYNE and SOUTHWICK, JJ., concur.
IRVING and LEE, JJ., not participating.
NOTES
[1] The year 1996 was a leap year.