554 So.2d 313 (1989)
Terence Ittis TROTTER
v.
STATE of Mississippi.
Nos. 07-58729, 07-58730.
Supreme Court of Mississippi.
November 29, 1989.
*314 David H. Linder, Meridian, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice January 3, 1989; Mike C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, Michael C. Barefield, Hattiesburg, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Circuit Court of Lauderdale County, Mississippi, where appellant, Terence Ittis Trotter, pled guilty to two counts of burglary. In an order deferring sentencing, the trial court imposed certain "probation-like" conditions. More than four years later, Trotter was sentenced to two concurrent two-year terms in the custody of the Mississippi Department of Corrections. Finding that the extreme delay in sentencing violated Trotter's Sixth Amendment right to a speedy trial under the particular circumstances of this case, we reverse.

STATEMENT OF THE FACTS
On June 15, 1983, Terence Trotter entered pleas of guilty to two counts of burglary. At that time, Trotter was 18 years of age and had completed the eleventh grade of school and part of the twelfth grade. The Circuit Court of Lauderdale County accepted Trotter's guilty pleas, but deferred sentencing. On August 26, 1983, Trotter appeared for sentencing and the trial judge entered an order deferring sentencing until December 2, 1983. On December 2, 1983, the trial judge entered an order again deferring sentencing until December 12, 1984. This order, however, imposed certain "probation-like" conditions, as follows:
(1) The Defendant is to remain at home at night. The Defendant is to go to Detroit to live with his parents.
(2) The Defendant shall make an accounting each day showing who he worked for and how much his employer agreed to pay him.
(3) The Defendant must pay one-half (1/2) of [his] earnings each week to the Circuit Clerk so that it can be used for Court costs, restitution to the victim or attorney's fee, if the Court has appointed an attorney.
(4) The Defendant must abstain from drinking alcoholic beverages or using any illegal drugs prior to sentencing.
(5) The Defendant is to report back to the Court on December 7th, 1984.
The trial judge's order also included the following declaration:
Unless the Defendant has a legal or lawful excuse, a failure to perform any of the above conditions will result in a penitentiary sentence.
(R. 14)
The record does not reflect any further activity in the case until July 8, 1987  four years after Trotter's previous appearance before the court  when the Assistant District Attorney filed a motion requesting a sentencing date on the two causes. In the meantime, Trotter had completed high school and served almost two years in the U.S. Army, receiving an honorable discharge. The fact that Trotter had never been sentenced was brought to the District Attorney's attention only when Trotter was arrested on a charge of possession of cocaine, *315 upon which charge Trotter was never indicted or tried.
On August 3, 1987, a sentencing hearing was held. After a full hearing in which Trotter contested the imposition of sentence, Trotter was sentenced to serve two years on each of the two burglary charges, the sentences to run concurrently.
From that sentence, Trotter appeals, claiming that the delay of more than four years in sentencing him violated his fifth amendment right to due process and his sixth amendment right to a speedy trial. He also claims that the delay in sentencing violated certain provisions of the Mississippi Constitution, as well as Rule 6.01 of the Mississippi Uniform Rules of Circuit Court Practice.
A preliminary point needs to be addressed. The State contends that this appeal should be dismissed for lack of jurisdiction because Trotter pleaded guilty to the charges against him. The State cites Miss. Code Ann. § 99-35-101 (1972), which states:
Any person convicted of an offense in a circuit court may appeal to the supreme court, provided, however, an appeal from the circuit court to the supreme court shall not be allowed in any case where the defendant enters a plea of guilty.
In Burns v. State, 344 So.2d 1189 (Miss. 1977), this Court implied that an appeal from a sentence imposed pursuant to a guilty plea is not equivalent to an appeal from the guilty plea itself. In Burns, an appeal from denial of a habeas corpus petition challenging the legality of a sentence imposed subsequent to a guilty plea was treated by this Court as a direct appeal. While the Court acknowledged the language of § 99-35-101, the Court stated: "[W]e do not deem the present case as an appeal from a guilty plea." Burns, 344 So.2d at 1190.
Now, to the merits of the appeal.

DID THE TRIAL COURT ERR IN SENTENCING TROTTER MORE THAN FOUR YEARS AFTER ENTRY OF HIS PLEAS OF GUILTY?
At the sentencing hearing on August 3, 1987, Trotter's stepfather Jesse Underwood testified that on August 26, 1983, when Trotter first appeared for sentencing, the trial judge ordered Trotter to perform 40 hours of community service work per week. This work was to be performed from that date until the deferred sentencing date in December of 1983. According to both Underwood and Trotter, Trotter performed the community service work as ordered.
When Trotter appeared for sentencing on December 2, 1983, the trial judge again deferred sentencing, this time until December 12, 1984. Trotter then went to live with his mother and stepfather in Detroit, where he completed high school and thereafter enlisted in the Army. According to the undisputed testimony of Underwood, during the "probationary" period from December 2, 1983, to December 12, 1984, Trotter sent more than $600.00 to the court in compliance with the trial judge's order of December 2, 1983.
Although the deferred sentencing had been set for December 12, 1984, according to Trotter he contacted the court and had it delayed until December 20, 1984, because of a conflict with his army training. Trotter testified that he appeared for sentencing on December 20, 1984. Trotter stated that at that time "they talked a little bit and says I haven't got in no more trouble or nothing like that. I thought it was all over with then."
Underwood testified that he could not state with certainty who all was at the December, 1984 hearing. He stated that the only people he remembered being there were himself, Trotter, Trotter's mother, the judge, and "Mr. Clark" from the NAACP office. He stated that those present gathered in the judge's chambers. According to Underwood:
It was our understanding from the Judge that that was the end of it. He said, "Well ," he said, "Since everything has been met ...  he did community service work admirably and the money has been sent in for possible restitution and fine and he's finished high school on his own and been accepted into the Service, I see *316 no reason why things should not remain as they are. Good luck, Mr. Trotter."
(R. 48)
Joe Clay Hamilton, the attorney who represented Trotter on the burglary charges, testified that he appeared with Trotter for sentencing on December 2, 1983. Hamilton said it was his understanding that the judge was "in essence" placing Trotter on probation for a year. Hamilton stated that he did not remember what took place at the December, 1984 hearing and, in fact, could not recall having met with the judge on that particular date. According to Hamilton, he initiated frequent contact with the district attorney's office through July, 1985, trying unsuccessfully to determine the status of the case. Finally, he closed his file.
District Attorney Charles W. Wright, Jr. testified that he could not remember whether or not Trotter showed up for the December, 1984 sentencing hearing. He admitted that prior to Trotter's arrest on the possession-of-cocaine charge the State had made no effort to have Trotter sentenced on the two burglary charges.
The trial judge stated: "This is the first time I've had a request to sentence the man, as far as my memory is concerned. He may have been in the military service is the reason I didn't sentence him before but I don't know that. My memory is not that good."

DISCUSSION
Trotter's primary argument is that the more-than-four-year delay in sentencing him violates his sixth amendment right to a speedy trial. While the United States Supreme Court has not explicitly held that sentencing is a part of trial for sixth amendment purposes, it has suggested that an unreasonable delay in sentencing may constitute a violation of the sixth amendment. See Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). The United States Court of Appeals for the Fifth Circuit has explicitly held that "the imposition of sentence is part of the trial for the purposes of the Sixth Amendment speedy trial guarantee." Juarez-Casares v. United States, 496 F.2d 190, 192 (5th Cir.1974). See also United States v. Campbell, 531 F.2d 1333 (1976), cert. denied, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977); 3 C. Wright, Federal Practice and Procedure § 521.1 (1982).
In Yates v. State, 342 So.2d 312 (Miss. 1977), this Court apparently recognized that the imposition of sentence is part of the trial for sixth amendment purposes. Without explicitly holding to that effect, this Court applied the speedy trial analysis enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether the appellant had been denied his right to a speedy trial.
In Barker v. Wingo, the Supreme Court identified four factors to be considered in determining whether there has been a violation of a defendant's right to speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. The Supreme Court made it clear that none of those four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." Barker, 407 U.S. at 533, 92 S.Ct. at 2193.
In the instant case, Trotter contends that, applying the Barker v. Wingo factors, this Court should find that his sixth amendment right to a speedy trial was violated.

Length of Delay
According to the Barker Court, "length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530, 92 S.Ct. at 2191. Trotter argues that a 49 months' delay in sentencing is presumptively prejudicial. The State *317 concedes that the length of delay in sentencing Trotter was unreasonable. In United States v. James, 459 F.2d 443 (5th Cir.1972) cert. denied, 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972), the United States Court of Appeals for the Fifth Circuit held that two years and nine months was an unreasonable delay in sentencing. See also Juarez-Casares v. United States, 496 F.2d 190 (5th Cir.1974), (two years and seven months' delay in sentencing was unreasonable). In Beavers v. State, 498 So.2d 788 (Miss. 1986), this Court found that a delay of 423 days in bringing the case to trial was sufficient to require inquiry into the other Barker factors, and in Bailey v. State, 463 So.2d 1059 (Miss. 1985), a delay of approximately ten months was enough to trigger an analysis of the other Barker factors. Clearly, a delay of four years and one month is presumptively prejudicial so as to necessitate an inquiry into the other Barker factors.

Reason for Delay
Trotter contends that there was no reasonable excuse for the delay in his sentencing. He notes that the State made no effort whatsoever to have him sentenced until he was arrested on other charges in 1987. The State contends, on the other hand, that the delay in sentencing was for Trotter's benefit. According to the State, the reason for the delay from December, 1983 to December, 1984 was to enable Trotter to go to Detroit with his parents to finish high school, and the reason for the delay after December, 1984 was to allow Trotter to serve in the Army. The obvious flaw in this argument is that Trotter was discharged from the Army in February of 1986, some one year and five months before the State requested sentencing.
In Perry v. State, 419 So.2d 194 (Miss. 1982), this Court stated:
Where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution. It is the burden of the state to see that a defendant receives a speedy trial.
419 So.2d at 199. See Vickery v. State, 535 So.2d 1371, 1375 (Miss. 1988). In the instant case, the State has failed to show good cause for the delay in Trotter's sentencing. Therefore this factor must be weighed against the State and in favor of Trotter.

Defendant's Assertion of His Right to a Speedy Sentencing
The State contends that Trotter made little or no effort to assert his right to a speedy sentencing because he did not want a speedy sentencing. In contradiction to its argument on the reason for delay, the State says: "Trotter had all he could ask for. Total freedom to do as he pleased so long as he stayed out of trouble with the law." While it does appear that Trotter failed to demand a speedy sentencing, under the circumstances of this case that failure should not weigh heavily against him. Having successfully completed the conditions prescribed in the trial court's order of December 2, 1983, Trotter had good reason to believe that he would not be sentenced. That order, it will be recalled, stated that a failure to perform any of the enumerated conditions would result in a penitentiary sentence. The only reasonable inference to be drawn therefrom was that if Trotter successfully performed all of the conditions, he would not receive a penitentiary sentence. If Trotter thought after the December, 1984 hearing that he was not going to be sentenced, there was no reason for him to assert a right to speedy sentencing.
Moreover, Barker made it clear that, although "a defendant has some responsibility to assert a speedy trial claim, ... the primary burden [is] on the courts and the prosecutors to assure that cases are brought to trial." 407 U.S. at 529, 92 S.Ct. at 2191.
In the instant case, the primary burden was on the State to request that Trotter be sentenced. We hold that, under the particular circumstances of this case, Trotter's failure to assert his right to speedy sentencing should be weighed against him only lightly, if at all.

*318 Prejudice to the Defendant

The State claims that the delay in sentencing resulted in no prejudice to Trotter. Trotter contends that after such a long period of delay it should be presumed that prejudice has resulted.
In Yates v. State, supra, 342 So.2d at 316, this Court held that the defendant was not prejudiced by an eight-year delay in sentencing on armed robbery and kidnapping convictions. Yates, however, had been on death row for a murder conviction throughout the entire eight-year period. When the State was directed by a federal court in 1972 to resentence Yates on the murder conviction to a sentence less than the death penalty, he was resentenced to life imprisonment. At the same time, he was sentenced on the armed robbery and kidnapping convictions. See also Smith v. State, 489 So.2d 1389, 1392 (1986) (delay of almost seven years in bringing defendant to trial not prejudicial where delay was due to defendant's insanity and confinement to a mental institution). These cases are easily distinguishable from the instant case where the appellant, during the delay in sentencing, was attempting to integrate himself into society, as evidenced by his completing high school and serving in the military.
In Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), the U.S. Supreme Court noted that a defendant may be prejudiced in numerous ways by a delay in bringing him to trial. "Inordinate delay,
wholly aside from possible prejudice to a defense on the merits, may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' United States v. Marion, 404 U.S. 307, 320 [, 92 S.Ct. 455, 463, 30 L.Ed.2d 468] (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent... ."
414 U.S. at 26-27, 94 S.Ct. at 189-190, quoting Barker v. Wingo, 407 U.S. at 537, 92 S.Ct. at 2195 (White, J., concurring).
Moreover, in the instant case it is likely that Trotter was further prejudiced by the delay in sentencing, in that the sentence may have been influenced by the judge's knowledge of Trotter's arrest on a drug charge after the "probationary" period had expired. (According to the record, Trotter had not been indicted or tried on the drug charge.) See Juarez-Casares v. United States, supra, 496 F.2d at 192-93.
In any event, the U.S. Supreme Court has made it clear that an affirmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial. Moore v. Arizona, supra, 414 U.S. at 26, 94 S.Ct. at 189, citing Barker v. Wingo, supra.

Balancing Test
A careful analysis of the Barker v. Wingo factors supports Trotter's contention that he was denied his right to a speedy trial. Without question, there was an unreasonable delay in sentencing him; the state gave no good reason for the delay; although Trotter may not have effectively asserted his right to a speedy sentencing, he had reason to believe that because he had fulfilled the conditions imposed on him by the trial court, he would not be given a prison sentence; and if Trotter was aware that he would at some point be sentenced, he was almost assuredly prejudiced by the anxiety of having that uncertainty hanging over him like a Damocles sword for those many months.
Each speedy trial case must be evaluated on an ad hoc basis, and the four Barker factors must be considered in light of the particular circumstances of each case. Barker v. Wingo, 407 U.S. at 530, 533, 92 S.Ct. at 2191, 2193. We hold that under the facts of this particular case, where Trotter had fulfilled the "probation-like" conditions of deferral of his sentencing, the lengthy delay in sentencing him violated his right to a speedy trial as guaranteed under the sixth amendment.
Because we reverse on the sixth amendment issue, we need not address the other points raised by the appellant.

*319 CONCLUSION
The proper remedy for denial of a defendant's right to a speedy sentencing is to vacate the sentence and release the defendant from custody. Juarez-Casares v. United States, 496 F.2d 190, 193 (5th Cir.1974). The judgment of the Circuit Court of Lauderdale County, sentencing Trotter to two years on each count of burglary, is therefore vacated and the appellant is discharged.
JUDGMENT VACATED AND APPELLANT DISCHARGED.
PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
HAWKINS, P.J., dissents by separate written opinion, joined by ROY NOBLE LEE, C.J.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
Amendment 6, U.S. Constitution guarantees an accused "the right to a speedy and public trial." I agree with the holding of the Louisiana Supreme Court in State v. Johnson, 363 So.2d 458 (La. 1978), that this provision is inapplicable to a defendant after a judgment of conviction. And, if it were, it would be incumbent upon the accused to demonstrate prejudice to his case by such delay. State v. Steelman, 126 Ariz. 19, 612 P.2d 475 (1980), cert. den. 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141.
The majority's view fails to convince me that Trotter has shown how the delay in this case harmed him.
The delay in sentencing Trotter in this case was for his benefit, to give him a chance. He is the one who subsequently misbehaved in possessing cocaine.
I would affirm.
ROY NOBLE LEE, C.J., joins this opinion.