945 So.2d 1004 (2007)
James Ray EDGE, Jr. a/k/a Buddy, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KP-00883-COA.
Court of Appeals of Mississippi.
January 2, 2007.
*1005 James Ray Edge, Jr., Appellant, pro se.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. James Ray "Buddy" Edge, Jr. was convicted in the Circuit Court of Itawamba County on one count of burglary of an occupied dwelling pursuant to Section 97-17-23 of the Mississippi Code Annotated (Rev.2004). Edge entered an open plea of guilt, and the circuit court judge thereby imposed a sentence of twenty years in the Mississippi Department of Corrections, with ten years to be suspended and five years post-release probation. Under the statute, the maximum allowed sentence is twenty-five years, with the minimum being three years. Aggrieved, Edge appeals on the issue of:
I. WHETHER THE SENTENCE IS DISPROPORTIONATE IN RELATION TO THE CRIME COMMITTED
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Edge and his wife, Alison, were married in 2001. After four years of marriage, the couple separated. They had one biological child together, Dalton. Two of Alison's children from a previous relationship also resided with the couple.
¶ 4. On August 4, 2003, Edge, on his way home from work, spotted Alison's car at the home of alleged "known" drug dealers, Jeff and Chrissy Dickerson. Edge had *1006 warned Alison the day before to stay away from the Dickersons. Edge suspected his children to be with Alison, so he stopped the car and entered the home to verify his suspicions. Inside, he found Alison accompanied by their three children and Jeff Dickerson. Edge demanded that Alison leave and attempted to extricate the children from the home. Alison fled, taking the children with her. Edge and Dickerson then became involved in a fist fight.
¶ 5. Alison took the children home and Edge soon followed. Alison refused to allow Edge entry into her home. Edge then kicked in the door, shattering the door and its frame. Edge entered the home, threw a phone against the wall and dismantled furniture. Edge found Alison in the kitchen holding his son Dalton, and he attempted to grab the boy from Alison's arms. Edge also threatened Alison with a hammer and subsequently swung the hammer above her head, putting a hole through the wall. The domestic dispute ended when one of Alison's children repeatedly hit Edge with a broom to make Edge leave.
¶ 6. The police were summoned and Edge was arrested on the charges of domestic violence, driving while his license was suspended, possession of a switched tag and possession of beer. While in the custody of the Itawamba County Sheriff's Department, the charge of domestic violence was enhanced to burglary in violation of Mississippi Code Annotated Section 97-17-23 (Rev.2006).
¶ 7. Edge entered an open plea of guilt to the charge of burglary, thereby waiving his right to a jury trial. The court performed an initial questioning of Edge to ensure the voluntariness of his plea and his mental capacity. Satisfied that Edge was competent, the trial court accepted the guilty plea.
¶ 8. At a post-plea sentencing hearing, the trial court further questioned Edge as to his mental state and mental health history. Edge stated that he had been under psychiatric care for several years and was currently on anti-depressants. Edge claimed that he had taken his required medication the day of the altercation with Alison, but also admitted that he had a chronic habit of marijuana usage.
¶ 9. Alison testified at the hearing. She stated that Edge had previously warned her about taking the children to the Dickerson home, because Edge was concerned for his children's safety. Despite Edge's protests, Alison took the children to the Dickerson's home anyway. Alison asked the court for leniency for Edge because by the time of the hearing, the couple had reconciled. Due to her own drug-related problems, Alison no longer had physical custody of the children.
¶ 10. The court conducted a pre-sentence investigation. After hearing from several of Edge's witnesses concerning extenuating and mitigating factors to the crime committed, the court ordered Edge to serve twenty years in the Penitentiary, with ten years suspended and five years to serve as post-release supervision. Edge was also ordered to participate in a long-term drug and alcohol treatment program, an anger management program, and to pay a fine of $1,000.
¶ 11. On June 24, 2004, Edge filed a motion to reconsider sentence through his counsel, which was denied. Aggrieved, Edge now appeals pro se the decisions on the final sentencing order and on the motion to reconsider sentence.

LAW AND ANALYSIS
I. WHETHER THE SENTENCE IS DISPROPORTIONATE IN RELATION TO THE CRIME COMMITTED
¶ 12. We first consider the State's contention that this appeal should *1007 be dismissed as an attempt to appeal a conviction based on a guilty plea. The State contends that Edge may not directly appeal a conviction imposed pursuant to an open plea of guilt. Miss.Code Ann. § 99-35-101 (Rev.2004). While the State is correct that such appeals are not allowed, this Court does have jurisdiction to consider an appeal challenging the length of a sentence. Trotter v. State, 554 So.2d 313, 315 (Miss.1989). An appeal from a sentence imposed pursuant to a guilty plea is not equivalent to an appeal from the guilty plea itself. Burns v. State, 344 So.2d 1189 (Miss.1977). Therefore, the State's motion to dismiss for lack of jurisdiction is overruled.
¶ 13. The State further asserts that Edge's proper remedy is to seek post-conviction relief pursuant to Section 99-39-5 of the Mississippi Code Annotated (Supp.2006). As our statutory law directs, "Direct appeal shall be the principal means of reviewing all criminal convictions and sentences. . . ." Miss.Code Ann. § 99-39-3(2) (Supp.2006). Post-conviction relief is a procedure limited to review of matters which "in practical reality, could not or should not have been raised at trial or on direct appeal." Foster v. State, 687 So.2d 1124, 1129 (Miss.1997) (citing Smith v. State, 477 So.2d 191 (Miss.1985)). The purpose of such proceedings is to present to the trial court facts "not known at the time of judgment." Id. Thus, we find that Edge's direct appeal challenging the length of his sentence is appropriate.
¶ 14. We next proceed to the merits of Edge's appeal. Edge argues that the sentence imposed is disproportionate to the gravity of the crime. As a first-time offender, Edge maintains he was entitled to "special consideration" in sentencing and that the sentence imposed is unduly harsh when considering mitigating factors of the crime and parallel sentencing.
¶ 15. As a general rule, sentencing is within the trial court's discretion and will not be disturbed on appeal if the sentence is within the term provided by statute. Davis v. State, 724 So.2d 342, 344 (¶ 7) (Miss.1998). However, a sentence that is "grossly disproportionate" to the crime committed is subject to attack on Eighth Amendment grounds. Id.
¶ 16. Although the sentence imposed does not meet the statutory maximum, Edge assails that the sentence is excessive given the nature and details of the crime. In light of Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), Edge contends that his sentence is disproportionate to his crime because he broke into Alison's home solely to protect his child, Dalton, from harm.
¶ 17. The United States Supreme Court outlined a three-part test in which to determine the proportionality of a sentence in regards to whether an Eighth Amendment prohibition against cruel and unusual punishment occurred. Id. The criteria was furthered modified under Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), to hold that the Eighth Amendment does not guarantee proportionality and that only "grossly disproportional" punishments will be reviewed under the Solem test.
¶ 18. With a showing of gross disproportionality, Solem requires these factors to be considered: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. Solem, 463 U.S. at 292, 103 S.Ct. 3001. Our supreme court has further held that "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality'" the *1008 proportionality analysis of Solem is used. White v. State, 742 So.2d 1126, 1135 (¶ 35) (Miss.1999) (citing Hoops v. State, 681 So.2d 521, 538 (Miss.1996)).
¶ 19. Although Edge's sentence may seem severe for a first-time offender, the Solem proportionality analysis is not implicated in this case because the sentence is not so "grossly disproportionate" as to violate the Eighth Amendment of the United States Constitution.
¶ 20. The record shows that Edge understood his guilty plea and that he was aware of the maximum and minimum lengths of the sentence. Before the sentencing hearing, the State offered Edge a sentence recommendation of fifteen years, which he rejected. The State withdrew the recommendation. The trial court informed Edge that had the State formally recommended a sentence length, the court would likely have accepted it. The court also inquired as to Edge's mental state. Edge testified that although he had a history of mental illness, he regularly took his medication and had taken the medication on the day in question.
¶ 21. A law enforcement officer took the stand to testify that Edge was known among narcotics agents as being involved with methamphetamine. The officer also stated that Edge had been involved in other domestic disturbances prior to the one in question. Edge had also served thirty days in jail for stalking Alison, and admitted to a chronic habit of daily marijuana usage.
¶ 22. The trial court noted that given Edge's criminal and mental history, "worse things could happen." The twenty year sentence was within the statutory guidelines. Due to the seriousness of Edge's crime of burglary, we cannot say that the sentence is grossly disproportionate to the crime. The trial judge is in the best position to hear and evaluate the relevant evidence, and we can find nothing in the record to indicate that an abuse of discretion occurred. Therefore, we affirm the sentence.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF ITAWAMBA COUNTY OF CONVICTION OF BURGLARY OF AN OCCUPIED DWELLING AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, PAY $1,035 RESTITUTION AND FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.