DICKINSON, Presiding Justice,
concurring in part and dissenting in part:
¶ 27. If history teaches us anything, it is that this Court has little interest in a defendant’s constitutional right to a speedy trial, or the State’s statutory obligation to bring an accused to trial within 270 days of arraignment.
*1153 ¶ 28. After his arrest, Edward Myers was incarcerated for seventeen months, during which time (1) he wrote a letter informing the court clerk that he had not been before a judge, and demanding to be brought to court; and (2) he filed a pro se “Motion to dismiss charges for failure to provide a fast and speedy trial” and “memorandum in support of Motion to Dismiss Charges for Failure to Provide a fast and Speedy Trial.” Despite his efforts, for seventeen months, Myers had no initial appearance; no preliminary hearing; no appearance before any judge of any kind; no grand jury proceeding; and no lawyer. These are the facts, and they are uncontested.
¶ 29. Rather than decide this case, the majority sloughs it off to a trial judge to hold a hearing. For what? There are no witnesses to call. There was no judge, no prosecutor, no lawyer, and no file in the district attorney’s office. There was no court docket to be crowded.
¶ 80. The so-called “hearing” that is to take place on remand will result in a trial judge’s finding of no violation (thus providing the majority its usual abuse-of-diseretion refuge), or a trial judge’s adjudication of this obvious speedy-trial violation, which means this Court once again will have dodged the issue, keeping intact its nearly quarter-century perfect record of finding no speedy-trial violations.
¶ 81. We have the entire record before us, and it clearly demonstrates both that the State violated Myers’s right to a speedy trial, and that the State did not bring him to trial within the 270-day statute of limitations. In its brief, the State provides us nothing whatsoever to suggest otherwise.
¶ 32. Yet the majority chooses to remand this case and allow the State to go outside the record in search of something to counter Myers’s arguments. Interestingly, defendants are not afforded the same courtesy when they seek to have hearings before the trial courts. They are required to provide affidavits showing what evidence they can produce, should they be granted a hearing. Here, the State has not even asked for a hearing, and has neither attached an affidavit nor suggested that any evidence exists that would counter Myers’s claims. With respect, I believe the true reason for the remand is for the majority to avoid the issue, as our dismal record on speedy-trial issues bears out.
¶ 33. Of the more than sixty speedy-trial cases presented here over the past twenty-two years, this Court has found not a single violation. Not one. In fact, as the few who read my occasional dissents will recall, three years ago in Johnson v. State, a majority of this Court buried the right to a speedy trial without so much as a tombstone,[2] but with my meager attempt at an obituary tacked onto the end.[3]
¶ 34. Given this history, one would think that this Court’s majority could simply declare the right to a speedy trial does not exist. This merciful act would spare defendants, defense counsel, prosecutors, and trial judges the time, expense, and bother of going through the absurd motions of “analyzing” the Barker factors (discussed later), only to find in each case that this one (that weighs heavily in favor of the accused) was waived, or that one (that weighs in favor of the accused) was unimportant, or the other one (that weighs slightly in favor of the State) overrides all the others. Stated another way, it is im *1154 possible for anyone familiar with the Barker factors to take this Court’s speedy-trial analysis seriously.[4]
¶ 35. So one wonders why the majority continues its efforts to maintain the fiction that some day, in some case, the right to a speedy trial will be recognized. Simply put, today’s majority — by refusing to find and adjudicate this clear speedy-trial violation — makes clear that a Barker analysis is a complete waste of time and should be abandoned; and that the right to a speedy trial in Mississippi is nonexistent.
¶ 36. So today, because the majority plows through its usual mock analysis of the Barker factors, I am compelled again to say that, “[bjecause I believe the Sixth-Amendment right to a speedy trial is as important to us today as it was when it was proposed by our Founding Fathers in 1789, and ratified by the people in 1791, I respectfully dissent” to remanding this case for a hearing.[5]

Summary of the Facts

¶ 37. After Edward Myers was arrested for allegedly stealing $5 by displaying a gun, he sat in jail for 505 days without a hearing of any kind or a lawyer — but not for lack of Myers’s efforts. During that time, he wrote a letter to the court clerk requesting a court hearing; he sought help from the inmate legal assistance program; and he wrote a pro se motion to dismiss for statutory and constitutional speedy-trial violations. The delay between his arrest and trial was 1,335 days,[6] 1,119 of which he spent in a jail cell. After he was convicted, the trial judge delayed ruling on his post-trial motions for 970 days, preventing Myers from filing an appeal.

Timeline

¶ 38. Because speedy-trial claims are fact-intensive, and the events concerning Myers’s case span years, I provide below a detailed timeline:
October 28, 2004 — Arrested and incarcerated;
January 4, 2005 — Indicted;
June 6, 2005 — Demanded to be brought to court by writing a letter to the circuit clerk stating: “Right now I’m in the dark about the charge of Arm Robbery, I’ve been trying to get in touch with the clerk for awhile and I finally got an address to write you all.... I haven’t had a initial nor a preliminary hearing, so I’m writing to ask you to put me on the Court list. The case manager here at Marshall County said that I’m eligible for a hearing, on these charges, with all do respect, I would like to hear something soon. If I don’t I would have to take legal action.”
January 24, 2006 — Filed pro se “Motion to dismiss charges for failure to provide a fast and speedy trial” and “memorandum in support of Motion to Dismiss Charges for Failure to Provide a fast and Speedy Trial”
March 17, 2006 — Case was assigned to the public defender’s office;
March 17, 2006 — Waived arraignment, entered not-guilty plea, and trial was set;
August 7, 2006 — Trial court issued an order titled: “Order Resetting Trial AFTER DEFENDANT’S DEMAND and as a result of a crowded docket.” The order states, in part: “It appearing on *1155 motion ore terms of the State to reset this cause for trial that the defendant has demanded a trial, and another case with a priority setting was tried on the date this cause was set for trial,.... ” (Emphasis added.) The order set the case for trial on August 21, 2006. September 7, 2006 — Because the trial did not take place on August 21, the trial court issued another order titled: “Order Resetting Trial AFTER DEFENDANTS DEMAND and as a result of a crowded docket.” (Emphasis added.) The order states, in part: “It appearing on motion ore tenus of the State to reset this cause for trial that the defendant has demanded a trial, and another case with a priority setting was tried on the date this cause was set for trial,.... ” (Emphasis added.) The order set the case for trial on September 12, 2006. The trial did not take place on September 12, as scheduled. Instead, the record fell silent for 377 days; NOTE: The State neither offers an explanation nor points to anything in the record that explains this delay. There is no order granting a continuance for good cause shown, as required by Section 99-17-1 (discussed later), so this delay — standing alone — is sufficient for this Court to find a speedy-trial violation;
September 19, 2007 — Trial court noticed the case on a past docket and, again, set it for trial;
October 9, 2007 — Myers’s attorney filed an entry of appearance;
October 12, 2007 — Parties agree to a trial date;
November 21, 2007 — Myers released on bond;
February 9, 2008 — Parties agree to reset the trial;
June 24, 2008 — Myers’s first trial resulted in a mistrial because the jury deadlocked by a vote of 7-5;
August 7, 2008 — Myers’s second trial ended in a mistrial;
September 16, 2008 — After Myers’s third trial, the jury found him guilty of armed robbery.
¶ 39. It is worth repeating that, after he was convicted, it took the trial court 970 days to rule on Myers’s post-trial motions, preventing him from filing his direct appeal for several more years. Myers has raised both a violation of his Sixth Amendment right to a speedy trial and a violation of Section 99-17-1, which required the State to bring him to trial in 270 days following arraignment.

Sixth Amendment Right to a Speedy Trial

¶ 40. The Sixth Amendment right to a speedy trial “is one of the most basic rights preserved by our Constitution.”[7] Both the Sixth[8] and the Fourteenth[9] Amendments of the United States Constitution, as well as Article 3, Section 26 of the Mississippi Constitution, guarantee a defendant this basic right.[10] When we are presented a claim that the State has violated a defendant’s Sixth Amendment right to a speedy trial, we are supposed to apply a four-part balancing test (called the Barker factors) created by the U.S. Supreme Court in Barker v. Wingo: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; (4) prejudice.[11] We are supposed to “balance” those factors to determine whether, considered as a whole, *1156 they weigh in favor of or against the State, and no single factor is “either a necessary or a sufficient condition to the finding of a deprivation of the right to a speedy trial,” [12]

FACTOR 1: Length of the Delay

¶ 41. The Sixth Amendment right to a speedy trial attaches when a person is accused of a crime.[13] This Court considers an eight-month delay between the initial accusation and the trial presumptively prejudicial, triggering further Barker analysis.[14]
¶ 42. Here, police arrested and detained Myers on October 28, 2004, and brought him to trial 1,335 days later. This delay is more than four times the delay necessary to raise the presumption of prejudice and to require further Barker analysis. This factor weighs heavily in Myers’s favor, and against the State.

FACTOR 2: Reason for the Delay

¶ 43. The State bears the burden of bringing the defendant to trial,[15] and “where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay we must weight this factor against the prosecution.” [16] Because this case presents several periods of extended delay, I will analyze each:

The Initial 505-day Delay in Bringing Myers Before the Court and Appointing Him Counsel

¶ 44. Police arrested Myers on October 28, 2004. He was never provided an initial appearance, even though Uniform Rule of Circuit and. County Court Practice 6.03 required the State to provide him one within forty-eight hours of arrest;[17] and he was never provided a preliminary hearing as required by Rule 6.04.[18] In fact, Myers remained in jail without any hearing of any kind before any court for seventeen months. On January 4, 2005, Myers was indicted. Then, on March 17, 2006, he was appointed an attorney, he waived arraignment, and the trial court set his first trial date for August 8, 2006.
¶ 45. In responding to this appeal, the State had a burden to provide this Court with any evidence it had available to it concerning the issues raised. The State has provided us nothing to explain the 505-day delay between arrest and arraignment. Instead, the State says it “would assume [the delay] was due to Myers being in a MDOC correctional facility in another county and the time and difficulty associated with bringing him back to Madison County.”
*1157 ¶ 46. Even assuming the State’s assumption is correct, the U.S. Supreme Court has held that where a defendant is already incarcerated in one jurisdiction, but he faces separate charges in a different jurisdiction, that jurisdiction has a constitutional duty to bring him before a court:
By a parity of reasoning we hold today that the Sixth Amendment right to a speedy trial may not be dispensed with so lightly either. Upon the petitioner’s demand, [the jurisdiction where charges were pending] had a constitutional duty to make a diligent, good-faith effort to bring him before the .... court for trial.[19]
¶ 47. And, back in the days when this Court recognized the right to a speedy trial,[20] it considered this issue in another case and stated that the “right to [a] speedy trial cannot be dispensed on [the] ground that [the] accused is serving time in another jurisdiction.”[21] And the U.S. Supreme Court has clearly stated that the Sixth Amendment right to a speedy trial
has universally been thought essentially to protect at least three basic demands of criminal justice in the Anglo-American legal system: “(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself.” These demands are both aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction.[22]
¶ 48. So, it is no answer for the State to say it “assumes” the delay was caused by Myers being held in a different jurisdiction, and that it would be too difficult and too time-consuming for it to prosecute Myers. The State offers no legitimate, good-faith reason for its 505-day delay in bringing Myers before the court and appointing him counsel, so the first 505 days must count heavily against the State, which bore the burden of bringing Myers to trial.[23]
The Crowded — Docket Delays
¶ 49. Finally, on August 7, 2006, the day before Myers’s trial was set to begin, the State moved ore tenus to have the trial reset. Myers opposed this delay, but, because of another case that had “priority,” the trial court granted the State’s motion and reset the trial. But in doing so, the trial court clearly recognized that Myers was demanding a trial.
¶ 50. On September 7, 2006, after failing to bring Myers to trial on the rescheduled date, the State again moved to have *1158 the trial reset for September 12, 2006. The trial court granted the State’s motion and entered an order identical to the previous order. And again, the trial court clearly recognized that Myers “has demanded a trial.”
¶ 51. Myers’s arraignment occurred on March 17, 2006. The first trial-court order establishing that Myers had demanded a trial was entered on August 7, 2006, and the second order, which separately recognized Myers’s demand for a trial, was entered on September 7, 2006. Both these orders were entered less than 270 days following arraignment.
¶ 52. The State did not bring Myers to trial as scheduled on September 12, 2006. Instead, the record falls silent for 377 days, without explanation. Then, on September 19, 2007, the trial judge happened to notice that Myers’s case had fallen through the cracks,[24] so he sua sponte set another trial date on October 15, 2007.
¶ 53. We repeatedly have held that delay caused by overcrowded dockets must be weighed against the State — although “less heavily” than for other reasons[25]— and that “the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.” [26] So the 174-day delay caused by the Madison County Circuit Court’s overcrowded dockets[27] must weigh slightly against the State. But, following the 174-delay that weighs slightly against the State, is another delay of 377 days that is totally unexplained. This delay must weigh heavily against the State.

The Agreed Delay

¶ 54. The delay from October 12, 2007, until Myers was finally tried was caused by agreements between the parties, so this period does not weigh against the State.

The Entire Delay Factor

¶ 55. Not counting the agreed delay,[28] there was a 505-day initial delay during which Myers was never brought before any court. This delay weighs heavily against the State. Then, there was a 174-day delay caused by Madison County’s “overcrowded docket.” This delay weighs slightly against the State. Finally, there was a 377-day delay that is unexplained which weighs heavily against the State. Given that 882 days of the total delay of 1,056[29] days must weigh heavily against the State, and that another 174-day delay weighs slightly against the State, the reason-for-delay Barker factor must weigh heavily against the State.

FACTOR 3: Assertion of the Right

¶ 56. “ ‘[A] defendant “has no duty to bring himself to trial.... ” Still, he gains far more points under this prong of the Barker test where he has demanded a *1159 speedy trial.’ ” [30] Myers easily satisfies this factor. After being incarcerated for months — and without the benefit of counsel — Myers wrote a letter to the Circuit Clerk of Madison County, pointing out that he had never had a preliminary hearing or initial appearance, and requesting that the State bring him before the court. He stated:
My name is Edward Myers and I’m writing concerning the charge that I have there in Madison County. Right now I am in the dark about the charge of armed robbery. I’ve been trying to get in touch with the clerk for a while.... I haven’t had a initial or preliminary hearing, so I am writing to ask you to put me on the court list.... I’m eligible for a court hearing, on these charges, with all due respect, I would like to hear something soon. If I don’t I would have to take legal action.... I write concerning my life which is very important to me. Can you write back to inform me of the situation!?]
(Emphasis added.)
¶ 57. This letter, while not inflected with legalese or terms of art, clearly demands that the State bring him to court. The letter was ignored. Neither the State nor the trial court took any action in response to Myers’s letter for another 232 days, so Myers wrote a “Motion to Dismiss Charges for failure to Provide a Fast and Speedy Trial,”[31] alleging that the State had violated both his constitutional and statutory right to a speedy trial. Again he was ignored until another fifty-one days had passed.
¶ 58. Twice more, Myers asserted his right to a speedy trial, as reflected in two separate court orders, both of which stated that “the defendant has demanded a trial.” Still, the State and the trial court ignored his requests. Myers could not bring himself to trial — that burden rests with the State. Because Myers repeatedly and unambiguously demanded a trial, this Barker factor must weigh heavily against the State.

FACTOR U: Prejudice

¶ 59. In addressing prejudice, the Barker Court outlined the three interests that a speedy trial protects, and that courts should consider during the prejudice analysis: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern; (3) limiting the possibility of impairing the defense.[32] Although, since 1992, this Court has not once found those interests to have been breached, it at least recognizes that they exist.[33]
¶ 60. The purpose of the Sixth Amendment right to a speedy trial has little to do *1160 with preventing prejudice. In fact, the U.S. Supreme Court, in United States v. MacDonald, held that:
The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.[34]
¶ 61. And so Myers’s incarceration in another county on a different charge for some period of time actually “aggravates] and compounds]” the prejudice Myers suffered on this charge pending in Madison County.[35] This Court, too, has held that pending charges in one jurisdiction cause prejudice to a defendant serving time in a different jurisdiction on a different charge.[36] Thus it cannot serve to minimize prejudice Myers suffered.
¶ 62. As the U.S. Supreme Court stated *1161 in MacDonald,[37] merely being incarcerated impaired Myers’s liberty, disrupted his life, and created anxiety concerning the pending charges[38] — which resulted in some prejudice. And being “locked up” also inevitably hindered Myers’s ability to “gather evidence, contact witnesses, or otherwise prepare his defense.”[39]
¶ 63. But this Court ignores these findings and instead has held that the defendant must make “[a]n evidentiary demonstration of prejudice,” and that simply stating that the defendant has suffered anxiety is not enough to infer prejudice.[40] But even if this is so, Myers’s failure to pass the majority’s litmus test for prejudice merely robs him of a factor in his favor. The absence of the majority’s concept of prejudice cannot weigh in favor of the State. If it did, a defendant who could not produce “[a]n evidentiary demonstration of prejudice” could be incarcerated indefinitely without a trial. Surely the majority sees this.
¶ 64. And even accepting the majority’s view of the prejudice factor, the absence of prejudice is not dispositive of the Barker analysis. Actual prejudice is only a single factor in the Barker analysis, and the U.S. Supreme Court has gone to great lengths to establish clearly that proof of actual prejudice is not necessary to succeed on a claimed speedy-trial violation.
¶ 65. In Moore v. Arizona, the U.S. Supreme Court found that the Arizona Supreme Court erred when it held that a showing of prejudice was essential to establish a constitutional speedy-trial claim.[41] Specifically, the U.S. Supreme Court stated:
The state court was in fundamental error in its reading of Barker v. Wingo and in the standard applied in judging petitioner’s speedy trial claim. Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.[42]
¶ 66. Then, in Doggett v. U.S., the U.S. Supreme Court again made clear that prejudice is only one factor in the balancing test, and “consideration of prejudice is not limited to the specifically demonstrable ... affirmative proof of particularized, prejudice is not essential to every speedy trial claim.”[43] And again, back when this Court recognized the right to a speedy trial, it applied the U.S. Supreme Court’s holding in Moore v. Arizona:
[T]he U.S. Supreme Court has made it clear that an affi.rmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial.[44]
¶ 67. Simply put, a defendant need not succeed on this prong to succeed ultimately on a claimed speedy-trial violation.

Balancing the Barker factors

¶ 68. The U.S. Supreme Court intended the Barker analysis to be a balancing *1162 test.[45] No one factor is necessary or sufficient to find a speedy-trial violation.[46] We are supposed to complete the delicate weighing of each factor.[47]
¶ 69. Here, the length of the delay, the reason for the delay, and the assertion of the right all weigh heavily in Myers’s favor. And even assuming the prejudice factor weighs against Myers, it certainly does not outweigh the other three factors. Accordingly, any fair weighing of the Barker factors in this case results in finding a violation of Myers’s Sixth Amendment right to a speedy trial. After all, this Court (back in 1985) examined a case where the factors weighed exactly as they do today and held that this same balance favored the defendant:
Under both Barker and Bailey, three factors weigh against the state: (1) assertion of the right by Burgess, (2) the reason for the delay by the state, and (3) the length of the delay. These outweigh item (4) prejudice, if the Barker and Bailey holdings that no one factor is dispositive are to have any meaning at all.[48]
¶ 70. Because I would find that the Barker analysis weighs in heavily in Myers’s favor, and that no reasonable trial judge could hold otherwise, I would hold that the State violated Myers’s Sixth Amendment right to a speedy trial.

Speedy-Trial Statute

¶ 71. In addition to the constitutional right to a speedy trial, the Legislature has provided that: “[ujnless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred and seventy (270) days after the accused has been arraigned.”[49] This statute of limitations has been completely ignored by this Court for decades. Here, 830 days — more than three times the statute of limitations— passed between Myers’s arraignment and his trial.

Section 99-17-1

¶ 72. In Barker, the U.S. Supreme Court, without ambiguity, found that the constitutional right to a speedy trial cannot be waived by inaction.[50] And states are free to provide more protections than the Constitution allows, but not less. But, instead of adhering to this constitutional mandate or to the plain, unambiguous language of Section 99-17-1, we instead left behind any notion of judicial restraint, respect for Legislative enactments and principles of constitutional law, and the well-settled rule that criminal statutes must be construed in favor of the defendant.[51]
¶ 73. I do not believe this Court has the authority to create a rule that requires the defendant to assert the statutory speedy-trial claim within 270 days of arraignment. But even if we do, Myers did. And in any case, the U.S. Supreme Court has said such a right may not be waived by inaction. I would find that Myers was not required to assert the speedy-trial violation to be protected under Section 99-17-1; and that, even if he was, he did.
*1163 ¶ 74. On August 7, 2006 — 143 days after Myers’s arraignment — the trial court entered an order to reset Myers’s trial date. In that order, the trial court ruled that Myers had demanded a trial:
IT APPEARING on motion ore terms of the State to reset this cause for trial that the defendant has demanded a trial and another case with a priority setting was tried on the date this cause was set for trial....
¶ 75. Then, on September 12, 2006— 179 days after Myers’s arraignment — the trial court again reset the trial date and made a ruling that Myers had demanded a trial:
IT APPEARING on motion ore temas of the State to reset this cause for trial that the defendant has demanded a trial and another case with a priority setting was tried on the date this cause was set for trial....
¶ 76. So, not only did Myers demand the State bring him to trial three separate times, he did so twice after — and within 270 days of — arraignment. And the trial court made two separate rulings (after arraignment) recognizing that Myers did so. And still, 651 days passed after Myers’s last demand before the State actually brought him to trial.

Good Cause and Prejudice

¶ 77. Under the language of the statute, when, as here, the delay between arraignment and trial exceeds 270 days, the State is precluded from prosecuting the case “[u]nless good cause be shown, and continuances duly granted by the court....”[52] But this Court has held that “only those delays attributable to the State count towards the 270 days.”[53]
¶ 78. As explained in great detail above, at least 551 days between Myers’s arraignment and his trial are attributable solely to the State. This Court, however, has held that, for the purpose of determining “good cause” under the speedy-trial statute, “docket congestion can constitute ‘good cause’ for delay.”[54] Because 174 days of the delay were caused by priority trials, I will not count this time against the State. But that still leaves the unexplained 377 days that Myers’s case was left on a past trial docket with no continuance for good cause shown, and no order whatsoever entered. These 377 days must weigh against the State.
¶ 79. But the analysis cannot end there, because, somewhere along the line of this Court’s muddled caselaw on this issue, we have confused and intertwined the speedy-trial statute of limitations with the constitutional right to a speedy trial.[55] In doing so, this Court created another addition to Section 99-17-1, which appears nowhere in the language of the statute. Now, not only does the defendant have to assert the statute of limitations before it runs (unheard of with respect to any other statute of limitations), he also must prove that he was prejudiced by the delay.[56]
¶ 80. A strict — or even somewhat less than strict — interpretation of the language of Section 99-17-1 does not require a finding of prejudice. A majority of justices on this Court simply made it up. I would hold that the speedy-trial statute of limitations — like all other statutes of limita *1164 tions — applies irrespective of any consideration of prejudice.
¶ 81. The Legislature enacted Section 99-17-1 as a statute of limitations. Nothing in the statute refers to a defendant’s “right.” The statute simply places a time limit on the State’s right to try a defendant. Such a statute of limitations is perfectly logical, since the Legislature must respond to the public’s demand that justice not be delayed. And neither this Court nor any court has ever held that, absent a showing of prejudice, a statute of limitations does not apply.
¶ 82. Because the State was responsible for at least a 377-day delay between Myers’s arraignment and his trial, I would find that the State failed to prosecute the case within the 270-day statute of limitations.
¶ 83. Because the State violated Myers’s constitutional right to a speedy trial; and because it failed to prosecute the case within the 270-day statute of limitations, I would reverse and render.
KITCHENS, CHANDLER AND KING, JJ., JOIN THIS OPINION.

. Johnson v. State, 68 So.3d 1239, 1248 (Miss.2011) (Dickinson, P.J. dissenting).

. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. Id. at 1248 (Dickinson, P.J. dissenting).

.This 1,335-day delay is from arrest to Myers’s first mistrial. The eighty-four days following the first mistrial and Myers's ultimate conviction do not weigh against the State, as it timely proceeded through two mistrials.

. Klopfer v. North Carolina, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967).

. U.S. Const, amend. VI.

. U.S. Const, amend. XIV § 1.

. Miss. Const, art. 3 § 26.

. Barker, 407 U.S. at 531, 92 S.Ct. 2182.

. Id. at 533, 92 S.Ct. 2182: see also Ben v. State, 95 So.3d 1236, 1242 (Miss.2012) (citing Barker, 407 U.S. at 533, 92 S.Ct. 2182).

. Handley v. State, 574 So.2d 671, 674 (Miss.1990) (quoting Lightsey v. State, 493 So.2d 375, 378 (Miss.1986)), superceded by statute on other grounds ("For constitutional purposes, the right to a speedy trial attaches, and the time begins running, 'at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge.’ ”); see also United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) ("[I]t is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.").

. Ben, 95 So.3d at 1242 (citing McBride v. State, 61 So.3d 138, 142 (Miss.2011)).

. Vickeiy v. State, 535 So.2d 1371, 1377 (Miss.1988) (citations omitted).

. Id.

. URCCC 6.03.

. URCCC 6.04.

. Smith v. Hooey, 393 U.S. 374, 379, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969) (emphasis added).

. As I stated in Johnson v. State:
In 1972, the United States Supreme Court handed down Barker v. Wingo [citation omitted] .... In the forty years since Barker, this Court has applied the Barker factors to speedy-trial issues in ninety-eight cases — forty before 1992, and fifty-eight since.
Of those first forty cases, all decided prior to 1992, this Court found speedy-trial violations approximately one-fourth of the time.
But in the fifty-eight cases decided since 1992, this Court has not found a single violation. Fifty-eight cases in a row over the past nineteen years — and all decided in favor of the State.
Johnson, 68 So.3d at 1248-49 (Dickinson, P.J., dissenting).

. Peny v. State, 419 So.2d 194, 199 (Miss.1982) (citing Smith, 393 U.S. at 378, 89 S.Ct. 575) (emphasis added).

. Smith, 393 U.S. at 378-81, 89 S.Ct. 575 (emphasis added).

. See Vickeiy, 535 So.2d at 1377.

. The order stated: "It appearing to the Court that this cause remains on a past trial docket, ... this cause shall be and hereby is set for trial at 9:00 a.m. on the 15th day of October, 2007....”

. McBride, 61 So.3d at 141 (quoting Barker, 407 U.S. at 531, 92 S.Ct. 2182).

. McBride, 61 So.3d at 141.

. I cannot help but mention that the assertion of an overcrowded docket in Madison County is suspect, given the Madison County District Attorney’s recent public opposition to the Legislature's attempt to separate Madison and Rankin Counties into two separate districts. According to the district attorney, the cases are flowing through the circuit court without problem.

. 256 days.

. And this does not even account for the twenty-three days that passed from the order setting the trial for the fourth time and the entry of the first agreed order.

. Thomas v. State, 48 So.3d 460, 476 (Miss.2010) (quoting Jefferson v. State, 818 So.2d 1099, 1107-08 (Miss.2002) (quoting Brengettcy v. State, 794 So.2d 987, 999 (Miss.2001))).

. The record does not clearly indicate whether this motion was filed with the clerk's office, and the majority correctly notes that the certificate of service was left blank. But that motion was attached to the trial judge's September 7, 2006, Order Resetting Trial on the State’s Motion. And that motion clearly notes that the defendant demanded a trial. Accordingly, the State was on notice of the defendant’s attempt to litigate his right to a speedy trial.

. Barker, 407 U.S. at 532, 92 S.Ct. 2182.

. See Jenkins v. State, 947 So.2d 270, 277 (Miss.2006) ("In considering whether Jenkins was prejudiced by the delay, we must look to the three interests for which the speedy trial right was designed: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' ") (quoting Mitchell v. State, 792 So.2d 192, 213 (Miss.2001) (citing Barker, 407 U.S. at 532, 92 S.Ct. 2182)).

. United. States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982) (emphasis added).

. The Sixth Amendment right to a speedy trial:
... has universally been thought essentially to protect at least three basic demands of criminal justice in the Anglo-American legal system: "(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself.” These demands are both aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction.
At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that the delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge....
And while it might be argued that a person already in prison would be less likely than others to be affected by "anxiety and concern accompanying the public accusation,” there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large....
“(I)t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner’s ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement.”
Finally, it is self-evident that "the possibilities that long delay will impair the ability of an accused to defend himself” are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired.
Smith, 393 U.S. at 378-380, 89 S.Ct. 575 (internal citations omitted) (emphasis added).

.Perry, 419 So.2d at 200 (“Perry was prejudiced in serving a lengthy period of time at Parchman without the opportunity to participate in various rehabilitation programs due to the pendency of the Harrison County charges.”); see also Bailey v. State, 463 So.2d 1059, 1063 (Miss.1985) ("Bailey was prejudiced by serving approximately 10 1/2 months in Parchman without the opportunity to participate in rehabilitation programs due to the pending burglary charges.”).

. MacDonald, 456 U.S. at 8, 102 S.Ct. 1497.

. Id.

. See Barker, 407 U.S. at 533, 92 S.Ct. 2182.

. Murray v. State, 967 So.2d 1222, 1232 (Miss.2007) (citing State v. Magnusen, 646 So.2d 1275, 1285 (Miss.1994)).

. Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973).

. /¿.(emphasis added).

. Doggett v. U.S., 505 U.S. 647, 655, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992).

. Trotter v. State, 554 So.2d 313, 318 (Miss.1989), superceded by statute on other grounds.

. Barker, 407 U.S. at 533, 92 S.Ct. 2182.

. Id..; see also Bailey, 463 So.2d at 1062.

. Id.

. Burgess v. State, 473 So.2d 432, 434 (Miss.1985).

. Miss.Code Ann. § 99-17-1 (Rev. 2007).

. Barker, 407 U.S. at 528, 92 S.Ct. 2182.

. United States v. Brown, 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948); see also State v. Burnham, 546 So.2d 690, 692 (Miss.1989).

. Miss.Code Ann. § 99-17-1.

. Sharp v. State, 786 So.2d 372, 378 (Miss.2001) (citations omitted).

. McGee v. State, 608 So.2d 1129, 1133 (Miss.1992).

. See Guice v. State, 952 So.2d 129, 147 (Miss.2007) (Diaz, J., dissenting).

. Guice, 952 So.2d at 139-140.